RINGGOLD, ADM'R, *against* NEWKIRK AND OLDEN.

APPEAL *from Independence Circuit Court.*

The obligation and effect of a guarantee executed in New *Orleans is governed by the* law of Louisiana.

By the civil law, and the law of Louisiana, no consideration is necessary to be expressed in the guarantee, or to be proved at the trial upon it.

But the guarantor cannot be held liable unless the creditor uses reasonable diligence to make a demand on the original debtor, and gives notice of non-payment to the guarantor.

This was originally a motion for allowance made by the appellees in the County Court of Independence county, against the appellant as administrator of Charles Kelly, deceased. At January term, 1838, of the County Court, the appellees filed there a paper somewhat in the shape of a declaration, by which they claimed a debt of $806 12, and stated that on the 6th of March, 1833, Kelly made his promise in writing, and delivered it to the appellees, by which he, by the style of Montgomery, Kelly, & Co., guaranteed the payment of a bill of the same date to the appellees, made by Randolph and Keethley for $806 12: whereby he became liable to pay that sum according to the tenor and effect of said writing; and although the sum specified in the writing has been long due, that neither Kelly, nor Ringgold his administrator, had paid it, or any part of it.

The County Court allowed the sum of $806 12 against the estate, with $233 70 damages.

The appellant presented his petition to the Circuit Court, at June term 1838, for a mandamus to the County Court, commanding that tribunal to grant him an appeal: which petition was allowed, the mandamus issued, and the County Court granted the appeal.

When the case came into the Circuit Court the appellant moved to dismiss the suit for want of a bond for costs, which motion was overruled, and he then filed his plea in abatement, in which he alleged the non-residence of the appellees: and that they have not filed, or

Ringgold, Adm'r, *against* Newkirk and Olden.

caused to be filed with the Clerk, a bond, with security, for costs.    On demurrer to the plea it was declared insufficient.

On the trial in the Circuit Court, the court, notwithstanding the objections of the appellant, admitted the following writing in evidence, to wit:

"$806 12.                              *New Orleans, March* 6, 1833.

"We hereby guarantee the payment of bill of this date to Newkirk and Olden, by Randolph and Keethley, for eight hundred and six dollars twelve cents.                MONTGOMERY, KELLY, & Co."

This writing, together with the bill of goods sold to Randolph and Keethley, was all the evidence in the case.

The appellant objected to the admission of the guarantee because it showed no consideration, and was therefore void by the statute of frauds; because the bill of goods was barred by the statute of limitations; and because no notice of the non-payment by Randolph and Keethley of the bill of goods was ever given by the appellees to Kelly or his administrator.

The Circuit Court rendered judgment in favor of the appellees for $806 12, and Ringgold appealed.

FOWLER, for plaintiff in error:

It is contended, in behalf of Ringgold, that the Circuit Court erred in sustaining the demurrer to his plea in abatement.    Such plea was a proper mode of taking advantage of the facts that Newkirk and Olden were non-residents, and had filed no bond for costs, as required by the statute.    See 1 *Ark.* 247, *Means vs. Cromwell and Guthrey*, and case of *Clark vs. Gibson.*    2 *Ark.* 109.    The old statute, in relation to bonds for costs, which applies to this case, is broader than the present statute, which governed the case of *Clark vs. Gibson*, and that of *Dillard vs. Noel*, (2 *Ark.* 449,) and requires that non-resident plaintiffs shall, before they institute any suit "in the courts of this Territory," file a bond for costs—clearly meaning every court—not only circuit, but county and supreme.    *Vide, Steele and McCamp. Dig.* 314, 315.    Such plea ought, therefore, as it was formal in all parts, and good in substance, to have been sustained, and the suit abated thereon.

How far Ringgold's right to take advantage of such error, in this

13

court, was waived by the entry on the record of said Circuit Court, &c., is respectfully submitted to this court, with the single suggestion, that as there was no pleading over, it was but a judgment *nil dicit*, and as such, the erroneous decision upon said plea may be reached and corrected by this court.

But supposing that the plea in abatement has been passed too far to recal our steps, there is abundant cause for reversal set forth in the bill of exceptions, and expressly reserved for revision here.

There was no allegation in the declaration, or any pretence of proof, that payment had been demanded of Randolph and Keethley, and notice of their failure given to said administrator or his intestate. It is a general and well settled principle of law, and a rule to which the case before the court cannot form an exception, that guarantors are only collaterally liable on the failure of the principal debtor to pay the debt, and that a demand of the principal, and notice of his failure to pay to the guarantor are indispensable. See 6 *Pet. Cond. Rep.* 627; 7 *Cranch Rep.* 69; 2 *Pet. Cond. Rep.* 417; 12 *Wheat. Rep.* 515.

The cause of action is improperly stated in the declaration—and debt cannot be sustained upon such a collateral undertaking—*assumpsit* is the proper and only form of action. And for this reason the judgment should be reversed.

Further, the County Court, in which the claim was originally filed, had no jurisdiction of the subject matter; the Court of Probate having jurisdiction thereof properly; and the County Court having no such powers of adjudicating granted by the Constitution and laws of the State. If the County Court had not jurisdiction, neither had the Circuit Court, by appeal: and should this court reverse the judgment of the Circuit Court, and direct the Circuit Court to dismiss the appeal for want of jurisdiction, acquired through the County Court, which clearly had none, it is respectfully asked of this court that a supersedeas be awarded to the said County Court, setting aside and vacating the original judgment.

PIKE, *Contra:*

The points taken in the assignment of errors are:—
That the declaration is insufficient;

Ringgold, Adm'r, *against* Newkirk and Olden.

That the Circuit Court rendered judgment without jurisdiction—and when they could only reverse the judgment rendered by the County Court;

That the claim had not been regularly filed and notice given according to law;

That the form of action was misconceived—being debt instead of assumpsit;

That the court erred in sustaining the demurrer to the plea in abatement;

Error in admitting the writing in evidence;

That there was no evidence of the partnership of the appellees;

That there was no allegation or proof of demand made on Randolph and Keethley, and refusal by them to pay, or of notice thereof to Kelly or Ringgold.

We will take up these objections in the order of time to which they apply.

First, then, it is alleged that the claim had not been regularly filed, and notice given according to law. To this we reply, that by section 62, of the administration law, under which the County Court acted, the party claiming the allowance was required, at least fifteen days before the sitting of the court, to file with the Clerk his claim, together with the nature and amount of the same; which claim, so filed, it is provided, should be a sufficient notice to the executor or administrator. *Ter. Dig.* 73. In the present case, the term of the County Court commenced on the first Monday in January, A. D. 1838: and on the 18th of November, 1837, a notice of the claim was filed in the shape of a declaration. It does not appear on the record whether the writing sued on was then filed or not, but as no objection was made on that ground in the County Court, it must be presumed that it was filed in time, or, if not, the objection was waived by the administrator. Moreover, he appeared in that court, and appealed to the Circuit Court, and therefore could not now have any advantage of the objection, even if it existed.

*Second:* That the declaration is insufficient. By sec. 62 of the same law, *Ter. Dig., p.* 73, the County Court was required to proceed to the trial upon all claims offered for allowance, in a summary man-

ner *without the forms of pleading.* The paper treated by the appellant here as a declaration, was in fact only a *notice,* of the nature and amount of the claim, and is every way sufficient in that view. It describes the instrument on which the liability depended, and nothing more was necessary. But if insufficient, the appearance in both courts waived all objection to it.

*Third:* That the plaintiffs misconceived their action. No form of action is used in the County Court. No such actions as debt or assumpsit are used there: and the statement in the notice as to the demand of a debt is mere surplusage, and cannot vitiate. How could the County Court determine such a point, if it had been raised there? No demurrer to the notice could be filed; and all that court could do, was simply to look to the evidence, and see if it warranted an allowance. And the remarks of this court in *Jeffery vs. Underwood,* 1 *Ark.* 119, apply as forcibly here as in that case. It is there said, that because an action befoe a justice is styled in the summons an action of debt, does not make it so. " There is no law," said this court, " requiring the species of action to be stated in the summons. It is in every point of view immaterial; and being inserted, must be regarded as surplusage. The ground of action must be described, but the species of action need not be stated."

*Fourth:* That the Circuit Court rendered judgment without jurisdiction; and when they could only reverse the judgment rendered in the County Court. By sec. 34 of the administration law, *Ter. Dig. p.* 63, upon an appeal from the Court of Probate to the Superior Court, the appellate court was required to " proceed in that case on the merits, as though no trial had ever taken place in said cause; and *to give such judgment or decree, as the court below ought to have done."* And by sec. 7 of the law concerning *County Courts, Ter. Dig. p.* 160, the Circuit Court was to proceed "to try the same," and to enter up judgment on appeal. If judgment was against the appellant, it was for costs—if against the administrator, &c., the proceedings were to be remanded to the County Court, and there held as a voucher. The constitution left these laws in force; and if the general superintending control given the Circuit Court over the County Court and Justices of the Peace, merely authorized the superseding and re-

reversing of judgments of the County Court, and took away the power of trying cases on appeal from the County Court *de novo*, then it had the same effect as to appeals from Justices of the Peace: a position, we believe, never yet assumed. The act of November 7, 1836, (see *Pamph. Acts* 197,) allowed an appeal from the Probate to the Circuit Court, " according to the existing laws regulating appeals from the County Courts." And by sec. 3, of the act prescribing the powers of the Circuit Court, approved the same day, (*Pamph. Acts*, 181,) the Circuit Court was vested with *cognizance* and *legal jurisdiction*, of all actions and pleas, &c., and all suits and demands relative to estates, &c., whether brought before said court by original or mesne process, or by certiorari, or appeal from any inferior court; to *give judgment* and *award execution*, and have the same power to do so, as belonged to the Territorial Circuit Courts. And these laws were fully in force when this case was determined.

*Fifth:* That the Circuit Court erred in overruling the plea in abatement. What was that plea? It was that the plaintiffs were non-residents, and that the said plaintiffs have not, according to the form of the statute in such case made and provided, filed or caused to be filed, with the clerk, bond with security for costs. The plea, even if the matter could have been pleaded, is utterly wanting in that certainty required in every plea in abatement. It avers that " no bond has been filed *with the clerk.*" With what clerk? If the court were to give the allegation any meaning, the plea would amount to this: that the plaintiffs had filed no bond for costs *in the Circuit Court*—a kind of negative pregnant, from which to infer that they had filed one in the Probate Court. And this defect alone was fatal on demurrer, because defects, even in form, will vitiate a plea in abatement; and this is a defect in substance. Moreover, the plea commences *in bar*, and this is another defect.

But the plea in abatement came too late. The defendant had already entered a general appearance, and moved to dismiss the suit; and after doing so could not plead in abatement. Nor do we believe that he could take the objection in the Circuit Court, on an appeal, after omitting to make it in the Probate Court. He waived it in that court by going to trial—for, as the court decided in *Means vs. Crom-*

Ringgold, Adm'r, *against* Newkirk and Olden.

*well*, 1 *Ark.* 247, it was matter in abatement merely; and after going to trial he could not have advantage of it, any more than of any other matter in abatement not arising *puis darrein continuance.*

*Sixth:* That there was no proof of the partnership of the plaintiffs. No such proof is necessary, where the firm name contains the names of all the partners. It is only necessary where a person sues as plaintiff who is not named in the firm, as where the firm is A., B., and Co., and A., B., and C. sue. 1 *Saund. Pl. and Ev.* 288, 289; *Waters vs. Paynter*, cited *Chit. B.* 389. The rule is perfectly well settled, that where the contract is *expressly* made with one of the members of the firm, no joint interest need be proved. *Collyer* 405; *Evans vs. Mann, Cowp.* 369; *Ord vs. Portal*, 3 *Camp.* 239; *Smith vs. Hunt*, 2 *Stewart*, 222. Here the contract is made with *Newkirk and Olden*, and they are the only persons who sue.

*Seventh:* That the writing sued on should not have been admitted in evidence: and that there was no proof of demand on *Randolph and Keethley*, and of their refusal to pay, and of notice thereof to Kelly and Ringgold. The objection to the writing was that it showed no consideration: and that the bill of goods to Randolph and Keethly was barred by the statute of limitations.

The last objection presents not the slightest difficulty. For, first, *Newkirk and Olden* were beyond seas, *i. e.*, beyond the State, as the appellant himself shows upon the record, and therefore not barred. Second: the account between Randolph and Keethley, and Newkirk and Olden concerned the trade of merchadize between merchant and merchant; and therefore there was no bar. Third, the writing was executed March 6, 1833, and suit was brought in the Probate Court in Nov., 1837, and therefore five years had not elapsed. And lastly, it would not have followed, even if the bill had been barred, that therefore the writing was.

As to the consideration: there is no case which gives any color to this objection, except *Wain vs. Walters*, 5 *East* 10; where the guarantee was, " Messrs. Wain & Co., I will engage to pay you by half past four this day, fifty-six pounds and expenses, on bill that amount on Hall:" where the Court of King's Bench held the guarantee void, because no consideration was expressed in it. But in *Stapp* or *Stadt*

*vs. Lill*, 1 *Camp.* 242, and 9 *East* 348, where the guaranty was, "I guarantee the payment of any goods which J. Stadt delivers to J. Nichols;" Lord ELLENBOROUGH said, that by the guarantee there appeared a sufficient consideration for the defendant's promise to be answerable, if any goods should be delivered. In *ex parte Minet*, 14 *Ves.* 190, Lord ELDON expressed the strongest disapprobation of *Wain vs. Walters*, and said that there was a variety of cases contradicting it; for the undertaking of one man for the debt of another, does not require a consideration moving between them: and in *ex parte Gardom*, which came before him soon after, where the guarantee was, "whatever cotton twist you may dispose of to Mr. Thomas Tapp, we agree and engage to guarantee the payment of the same," 15 *Ves.* 287, 288, he said it was an agreement within the meaning of the statute, to pay for the debt of another person. Taking these cases together, the difference seems to be, that in *Wain vs. Walters*, nothing is stated on the face of the guarantee, but an absolute promise to pay, subject to no contingency, and not shown to be founded on any consideration, either of benefit to the party promising, or of loss to the party to whom the promise is made. The other cases are cases of conditional gnarantee, and founded on a sufficient consideration.

It is true, that where it appears distinctly on the face of the guarantee, that the goods have already been sold, the price of which is guaranteed, the guarantee is without consideration; as where the guarantee was, "I guarantee all Mr. Anderson has bought of you to Tuesday last," *Lyon vs. Lamb*, quoted in *Long on Sales, Rand's Ed.* 51.

Where the guarantee was, "I herewith hand you drafts, drawn by Mr. Wallis, and accepted by Mr. Bromley, and endorsed by R. Burns; and should the bills not be honored when due, I promise to see that they do so;" the guarantee was held sufficient. *Morris vs. Stacey, Holt, N. P. C.* 153; so a guarantee for "arrears now due," was held void, in *Wood vs. Benson*, in the Exchequer Chamber, in 1831, by Lord. LYNDHURST. And see *Morley vs. Boothby*, 10 *J. B. Moore*, 395; *S. C.* 3 *Bing.* 107.

But wherever you can, by reasonable construction, collect from the guarantee the consideration, it is sufficient. Per TINDAL, Chief Jus-

tice, in *Newbury vs. Armstrong*, 4 *Car. and Payne N. P. C.* 59; *S. C.* 1 *Mood. and Malk. N. P. C.* 589: and he said that the cases of *Wain vs. Walters*, and *Saunders vs. Wakefield*, had been carried to the extreme verge of the law. *Theobald on Pr. and Surety*, 16.

In the present case it does not appear on the face of the guarantee that the goods sold to Randolph and Keethly had been either purchased by or delivered to them when the guarantee was executed; and the instrument may as well be construed to read " bill of this date for goods *to be* purchased;" as " bill of this date for goods already purchased." At all events, the presumption is, the date of the bill and the guarantee being the same, that when the guarantee was given, the goods had not been delivered: and if by any reasonable construction the court can infer that the goods were either sold or delivered upon the credit and guarantee of Montgomery, Kelly & Co., the guarantee is sufficient. That the guarantee is sufficient, if the goods were delivered after it was given, see *Clark vs. Burdett*, 2 *Hall* 198.

And the case last cited contains a conclusive answer to the objection that no demand of payment was made on R. and K., nor any notice of their refusal given to Montgomery, Kelly or Ringgold. The court there said that they did not understand " that such a demand and notice are necessary to be proved, as conditions precedent to the plaintiff's right of action. The guarantee of the defendant is not a conditional, but an original undertaking, collateral to the promise of the vendee of the goods; and the defendant cannot set up as a defence any negligence of the plaintiffs, in calling upon the vendee for payment, unless, at least, he can show, that such negligence has been the cause of injury to him." And this doctrine is amply sustained by the case of *Duval vs. Trask*, 12 *Mass.* 156, *and People vs. Jansen*, 7 *J. R.* 339.

Furthermore, we would submit to the court, whether, if the writing here sued on was valid and sufficient by the laws of Louisiana, where it was made, to charge the person or persons making it, and by that law imported a consideration every way sufficient, *it* can, by the courts of this country be declared void, because it does not express the consideration in the manner required by own local statute? Does

not, in this respect, the *lex loci contractus* govern, and is not a contract, valid in the State where it is made, valid every where?

Guarantors, by our law, answer to the conventional sureties of the French law, who are said to be such as intervene by the agreement of the parties in the different contracts, as in contracts of loan, of sale, of letting, and the like; for instance, if a person borrows money, and has a surety who obliges himself to the lender to restore the loan; or buys something, or takes a lease, and has a surety who obliges himself for the payment of the price or rent. 1 *Evans' Pothier on Obl.* 386. By that law a person may engage himself as surety for any debtor whatever, *id.* 393—for any obligation whatever—*id.* 395; and the engagement may be made, by a simple agreement, either by an act before notaries, or under private signature, or even verbally; but if the object is more than a hundred livres, testimonial proof of a verbal signature is not admitted. *Id.* 400. And it is of no consequence whether the engagement of a surety be contracted at the same time as the principal obligation, or at a different time before or after. *Id.* 403.

So in the Civil Code of Louisiana, suretyship is defined to be " an accessary promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not." *Code, Art.* 3004. And there is no provision in that code, either that the collateral agreement or guarantee shall be reduced to writing, or that if reduced to writing it shall express a consideration.

An action, therefore, on this guarantee could be supported in Louisiana, the *locus contractus.* Is it not sufficient, therefore, in the courts of this State? *Maevius* says that the *lex loci contractus* is to govern, first, as to the *solemnities of the act or contract;* and secondly, *as to the effects* caused thereby. *Story, Conf. of Laws* 196. *Burgundus* says, that in every thing which regards *the form of contracts,* and the perfecting of them, the law of the place where the contract is entered into is to be followed: that as to the reducing of the contract to writing, the solemnities and ceremonies, and generally, as to every thing which belong to the formation and perfecting of it, the custom of the place where it is made is to govern. *Ib.* *Hertius* lays

14

down the same rule, that when the law imposes any form upon the business (*actus*) the law of the place where it is transacted is to govern. *Id.* 198. *Huberus* lays down the doctrine as follows— that " all business and transactions, in court and out of court, whether testamentary or *inter vivos*, regularly executed according to the law of the place, are valid every where, even in countries where a different law prevails, and where, if transacted, they would have been invalid. *Ib. Boullenois* lays down, among others, the following rules: First: The law of the place where the contract is entered into, is to govern as to every thing which concerns the *proof* and *authenticity* of the contract, and *the faith which is due to it*, that is to say, in all things which regard its solemnities or formalities. Secondly: The law of the place of the contract is generally to govern in every thing which forms the obligation of the contract, (*le lien du contrat*,) or what is called *vinculum obligationis*. Thirdly: The law of the place of the contract is to govern as to the *intrinsic* and *substantial form* of the contract. Ninthly: These rules are to govern equally, whether the contestation be in a foreign tribunal, or in the domestic tribunal proper for the controversy. *Id.* 199, 200. And Story, upon these and other authorities equally stringent, lays down the rule to be, that, " generally speaking, the validity of a contract is to be the law of the place where it is made. If valid there, it is, by the general law of nations, *jure gentium*, held valid every where, by tacit or implied consent. *Id.* 201. And in another place he settles the precise point here in question: where he says: " Thus by the English and American law, contracts falling within the purview of what is called the Statute of Frauds, are required to be in writing; such are contracts respecting the sale of lands, *contracts for the debts of third persons*, and contracts for the sale of goods beyond a certain value. If such contracts, made by parol, (*per verba*,) are sought to be enforced elsewhere, they will be held void, exactly as they are held in the place where they are made. And so the like rule applies, *vice versa*, where parol contracts are good by the law of the place; but would be void, if originally made in another place, where they are sought to be enforced, for want of certain solemnities, or for want of being in writing. *Story* 219. And see *Alves vs. Hodgson*, 7 *T. R.* 241; *Clegg vs. Levy*,

Ringgold. Adm'r, *against* Newkirk and Olden.

3 *Camp.* 166; *Vidal vs. Thompson*, 11 *Martin* 23; *Story on Conf. of Laws*, 526.

It is not to be doubted that the law is as here stated; and it results, as of course, that the instrument of guarantee, sued on, being sufficient by the law of Louisiana to charge the appellant, it is sufficient here, although it does not comply with the local statute of frauds—and this being established, the whole case is determined: for the other objections are perfectly futile and unsubstantial.

We may remark in conclusion, that the appellant asserts that the Circuit Court acted without jurisdiction. That may be. The case of *Goings vs. Mills*, 1 *Ark.* 11, determines, if we are not mistaken, that the mandamus irregularly issued—that the proceedings in the Circuit Court were unauthorized and void, and that the cause should there have been stricken from the docket, and the papers remanded to the Probate Court, the duty of which court would then have been to proceed upon the judgment as if no appeal had been allowed. We have no objection to this case being thus disposed of; inasmuch as our judgment there was for two or three hundred dollars more than was adjudged to us by the Circuit Court.

Lacy, *Judge*, delivered the opinion of the court:

In inspecting the record in this case we find some difficulty in determining in what court the suit was originally commenced. There are several entries denominating the court as the County Court of Independence, and others showing it was the Probate Court of that county. It is clear that the first tribunal had no jurisdiction in the premises, and it is equally manifest that the latter had. Taking the entries, however, separately and connectedly together, we think the record shows that the proceedings were had before the Probate Court. The writ of mandamus sued out was directed to the Judge of the Probate Court, and the judgment or allowance was entered up before the Probate Court.

The only question to be decided is, as to the effect of the guarantee. It is contended on the part of the appellant, *First*, that it is void, because it does not show any consideration, as required by the statute of frauds; and *secondly*, that there was no proof of a de-

mand on Randolph and Keethley, of their refusal to pay, and of notice to the appellant. If the first question turned upon the principles of the common law, it might be somewhat questionable whether the guarantee contained sufficient consideration. But this is a guarantee executed in the city of New Orleans, and of course the civil law, the *lex loci*, fixes the appellant's liability. This frees the case from all difficulty; for the civil law is express upon the point, and holds the guarantee to be good without proof of consideration. It goes upon the principle, that he who undertakes for another, shall be bound by his agreement; and that he cannot exonerate himself from his contract, by alleging that he received no consideration for its execution. According to the civil law the party who enters into an agreement voluntarily is bound by his stipulation, and he who accepted the guarantee looks to it for the ultimate fulfilment of the original undertaking. According to the Louisiana Code "suretyship is an accessary promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not." *Louisiana Code, Art.* 3004; *Herries vs. Canfield,* 9 *Martin* 385; *Woods' Civil Law* 227. POTHIER says, " suretyship is a contract, by which a person obliges himself on behalf of a debtor to a creditor for the payment of the whole, or a part of what is due from such debtor, by way of accession to his obligation. The contract which intervenes between the security and the creditor is not an agreement of beneficence, for the creditor, by this contract, receives nothing more than is due him. He only procures a security for what is due him, without which he would not have contracted with the original debtor." *Pothier on Obl., part* 2, *ch.* 6, *p.* 365.

The obligation of the security towards the creditor is to pay him in case the debtor should not satisfy the debt, and the property of such debtor is to be previously discussed or seized, unless the security should previously have renounced the plea of discussion, or be bound *in solido* jointly with the debtor, in which case the effects of his engagement are to be regulated by the same principles which have been established for debtors *in solido*." 11 *L. R.* 211, *Union Bank vs. Forstall;* 2 *Greenleaf* 341; 4 *Greenleaf* 72; 17 *Serg. and Rawle* 354; 8 *Cow.* 168. It is a stipulation to pay in case the original debtor

Ringgold, Adm'r, *against* Newkirk and Olden.

does not, and it is an auxiliary obligation. The right which the security would have of referring the creditor to the discussion of the principal debtor, is a right in equity as well as in strict justice. The creditor ought not to be allowed to enforce the payment of the security without notice of the non-payment of the principal debtor. A debt should be paid rather by those who are the real debtors, and who have profited by the contract, than by those who are debtors for others; a security, or guarantee, being but an engagement collateral to, and arising out of the original obligation. *Poth. on Obl.* 236, and 269; 12 *East* 227; 1 *Domat C. L.* 205; 1 *Cranch* 181; 3 *Cranch* 311; 1 *Cond. R.* 366; 1 *Mason* 368. In *Douglass, and others, vs. Reynolds, and others, Peters* 127, Judge STORY uses this language: "By the very terms of this guarantee, as well as by the general principles of law, the guarantors are only collaterally liable, upon the failure of the principal debtor, to pay the debt. A demand upon him, and failure on his part to perform his engagements, are indispensable to constitute a *casus fœderis.*" The creditor is not bound to institute any legal proceedings against the debtor, but he is required to use reasonable diligence to make demand, and to give notice of the non-payment. The guarantors are not to be held to any length of indulgence of credit which the creditors may choose; but have a right to insist that the risk of their responsibility shall be fixed and terminated within a reasonable time after the debt has become due. The objection taken by the defendant below to the want of notice of non-payment by Randolph and Keethley, upon the bill for which Montgomery, Kelly & Co., became the guarantors, is, in our opinion fatal. The judgment of the Circuit Court must be reversed.