# M. P. HALLORAN v. JACOB SCHMIDT BREWING COMPANY AND OTHERS.[1]

June 8, 1917.

Nos. 20,282—(108).

**Lease — guaranty of payment — foreign contract enforceable in Minnesota — statute of frauds — "saloon."**

A five year lease for a room in a building at Des Moines, Iowa, stipulating for the payment of monthly rent at that place, contained this guaranty in writing, signed by respondent: "We hereby guarantee the payment of this rental as per this lease." The lease with guaranty attached was delivered at Des Moines. The guaranty conforms strictly to the statute of frauds of Iowa. It does not conform to our statute in that the consideration is not expressed. It is *held*:

(1) No distinction should be made in the interpretation of sections 6998 and 6999, G. S. 1913, in our statute of frauds because of the fact that the one reads "no action shall be maintained" and the other "every contract * * * shall be void" unless evidenced by a writing, etc.

(2) The guaranty in suit, being executed in the form required by the statute of frauds of the state where made and to be performed, should be enforced by the courts of this state. The instrument being in writing, there is nothing objectionable to its use as evidence under the policy of the laws here.

(3) The lease was not illegal in its inception, for the pleadings disclose that the business of selling liquor at retail could then lawfully be carried on at Des Moines, and the lease provided that the lessees should carry it on according to the requirements of law.

(4) The laws of Iowa did not forbid respondent, a brewing concern, from executing the guaranty in question.

(5) The provision in the lease, that the lessees were to use the leased premises "for a saloon and for no other purpose," when taken with other provisions therein must be construed as meaning the ordinary liquor saloon or grog shop.

(6) A fair construction of the lease is that the parties provided against the event that, through no fault of the lessees, it might for any cause become unlawful to conduct the liquor business on the premises,

[1] Reported in 162 N. W. 1082.

and that then the lessees could terminate the lease by giving notice. It was perfectly proper for them so to do, and their agreement should be enforced.

(7) Plaintiff's contention that the word "saloon" should be given a broad meaning in the lease so as to include a place for public entertainment, a dancing hall or a temperance saloon is not sustained.

Action transferred to the district court for Ramsey county to recover $3,750 under a lease of a store room in Des Moines, Iowa, the rent of which was guaranteed by defendant brewing company. The defenses set up by the guarantor in its separate lease are stated in the third paragraph of the opinion. The case was tried before Michael, J., who granted defendant company's motion for judgment upon the pleadings as amended. From the order for judgment in favor of defendant, from an order denying his application for leave to amend his complaint and from an order denying his motion for a new trial, plaintiff appealed. Reversed.

*Cobb, Wheelwright & Dille,* for appellant.

*Charles Bechhoefer, Paul G. Bremer* and *A. E. Horn,* for respondent.

HOLT, J.

This appeal involves the right to recover the rent stipulated in a lease as against the guarantor thereof. The court ordered judgment upon the pleadings in favor of defendant, and plaintiff appeals from the order denying a new trial.

The lease consists of two attached instruments, or parts, both signed by the lessor and lessees. The one is upon the ordinary printed blank for lease, the other, called the *addenda,* is entirely typewritten and thereupon, after the signatures of the lessor and lessees is pasted a typewritten slip reading: "We hereby guarantee the payment of this rental as per this lease," signed by respondent. In each of the two instruments mentioned the other is referred to and made a part thereof, so that the two constitute but one contract. The lease is dated at the city of Des Moines, Iowa, on September 29, 1914, runs for five years, and covers the store room locally known as 517 Mulberry street in said city, the rent being $3,000 a year to be paid in monthly instalments of $250, in advance, at the office of plaintiff in said city of Des Moines.

Among the covenants, other than the payment of rent, to be performed by the lessees are these: "To use said premises for a saloon and for no other purpose," not to permit any unlawful business to be conducted thereon, to promptly pay the mulct tax, and to save the premises and protect the lessor against loss arising out of the conduct of the business, and to conduct the business orderly, then follows this paragraph: "19. It is hereby mutually understood and agreed by the parties hereto that in the event that the legislature of the state of Iowa should change or amend the laws of the state in such a way as to render it legally impossible for the party of the second part to conduct the business of selling liquors upon said premises, or should the district court or the supreme court of Iowa by adverse decision upon the case now pending in the district court of Polk county, Iowa, involving the validity of the saloon consent petition, nullify said petition and hold the same insufficient under the law, and should the party of the second part and other liquor dealers in the city of Des Moines fail, upon proper efforts being made, to procure a new consent petition, bearing a sufficient number of the names of electors of the city to entitle the maintenance of mulct saloons in the city of Des Moines, then and upon a happening of either of the events herein specified, the party of the second part may terminate this lease by serving written notice upon the party of the first part of the intention so to do, specifying the grounds upon which said action is taken in said notice, and from and after the expiration of ninety (90) days from the date of the service of said notice this lease shall be canceled and of no further force and effect, provided the said party of the second part has fully paid all of the rent due under the terms' of this lease, including the period of ninety days from and after the service of said notice and in addition thereto has paid all mulct tax standing against said premises by reason of the conducting of the business of the party of the second part in said premises and has discharged the said premises from the lien or effects of any injunction issued against the said premises by reason of the business of the party of the second part as conducted therein."

The complaint alleged the making of the lease and guarantee, the failure of the lessees to pay any part of the rent due for the period from February 1, 1915, to May 1, 1916, and asked judgment against them

and respondent, the guarantor, for the amount. The separate answer of respondent admitted the execution of the lease and guaranty as set out. It then alleged as a first defense that the guaranty was executed in consideration of the promise of the lessees to buy from respondent all the beer to be sold on the premises, and that such agreement is illegal under the laws of Iowa and vitiates the guaranty. The second defense was based on the so-called "Mulct Tax Law" of Iowa, alleging that when the lease was made the parties believed that there had been a compliance with the provisions of said law so that saloons could be lawfully operated in the city of Des Moines, but that "on or about February 15, 1915, the city council * * * refused to give its consent to the operation of mulct saloons in the [said] city * * * from and after the fifteenth day of February, 1915," and also that, on February 23, 1915, in the district court of the proper county, it was adjudged that the statement of general consent under which saloons in the city had been operated was insufficient, and that, since the lease provides that the room rented should be used for saloon and for no other purpose, the term ended when it became impossible to lawfully carry on that business in the premises. The Iowa statues applicable to carrying on the sale of intoxicants were also set out. The reply denied the first defense, admitted the statutes as pleaded, also the withdrawal of consent by the city council and the adjudication of the district court as alleged.

Defendant moved for judgment on the pleadings, but pending a decision the parties, by consent, adduced their evidence, and plaintiff then asked leave to amend the complaint to conform to the proof. The amended complaint in substance alleged that plaintiff refused to lease to defendants unless at the same time, and as a part of the transaction, respondent guaranteed the rent, and thereupon respondent and the lessor and lessees signed and delivered the guaranty and lease at Des Moines, Iowa; it also set forth the Iowa statute of frauds, providing that no evidence of a contract of guaranty is "competent, unless it be in writing and signed by the party charged or by his authorized agent." The court permitted the amendment to the extent of pleading the statute, but denied it in the other respect. It is not perceived why the court should not have allowed the complaint to be amended as asked, unless

the disallowed portions were deemed immaterial. The matter, however, rested largely in the discretion of the trial court, and we need not consider whether there was here an abuse of that discretion or whether the refused amendment was in any event material, for we have come to the conclusion that there must be a new trial on other grounds. In passing, it may be said that appellant's proposition that respondent, by signing the guaranty, and thus giving the lessees opportunity to take and occupy the premises, is estopped from questioning the validity of the instrument, does not appeal to us as sound law.

We consider the pleadings, as amended in the particular stated, and therefrom the lease appears clearly to be an Iowa contract, there executed, leasing premises situate in that state, the rent there payable. The guaranty, also there made, must likewise be considered an Iowa contract to be there performed. It also appears, or must be so considered in determining the motion for judgment on the pleadings, that the guaranty is executed in strict conformity to the Iowa statute of frauds, it being in writing subscribed by the party charged.

As a general rule, a contract entered into with all the formalities required to make it valid in the state where made and to be performed, will be enforced in another state unless contrary to the policy of the laws of the forum. In England it was held in Leroux v. Brown, 12 C. B. 801, that the statute of frauds pertained to the remedy or procedure, and therefore the courts of England would not enforce a verbal contract made and to be performed in France, though there valid, because in England the statute of frauds reads that no action could be maintained upon the contract unless in writing. In that case one of the judges suggested a distinction between the fourth and seventh sections in their statute of frauds, namely, that, since the former says no action shall be maintained upon certain contracts unless in writing, it merely relates to the procedure, and therefore applies to every contract, no matter when made or where to be performed, implying that the latter section, which reads that no contract of the kind therein specified shall be good unless in writing, relates to the validity of the contract, rather than to the procedure, and might not apply to a foreign contract. In 2 Wharton, Conflict of Laws (3d ed.) § 690b-f, the matter is fully discussed. The distinction suggested, as well as the decision itself, has

been questioned by Willis, J., in Gibson v. Holland, L. R. 1 C. P. 1. Williams v. Wheeler, 8 C. B. (N. S.) 299, 316; see also Green v. Lewis, 26 U. C. Q. B. 618. In this country the distinction suggested in Leroux v. Brown, supra, has been adopted by some courts (Downer v. Chesebrough, 36 Conn. 39, 4 Am. Rep. 29; Boone v. Coe, 153 Ky. 233, 154 S. W. 900, 51 L.R.A.(N.S.) 907; and Third Nat. Bank of New York v. Steel, 129 Mich. 434, 88 N. W. 1050, 64 L.R.A. 119), with the result that when the statute of the forum reads, that no action on a contract shall be brought unless it is evidenced by a certain writing, no action can be entertained on a contract made and to be performed in a sister state, if it be not evidenced in conformity with the statute of the forum, even though valid where made and to be performed. Other courts here ignore or repudiate the distinction and hold squarely that a contract, valid under the statute of frauds of the state where made and to be performed, should be enforced in the courts of any sister state, although not evidenced as required by the statute of frauds of the forum. Miller v. Wilson, 146 Ill. 523, 34 N. E. 1111, 37 Am. St. 186; Cochran v. Ward, 5 Ind. App. 89, 29 N. E. 795, 31 N. E. 581, 51 Am. St. 229; Ringgold v. Newkirk, 3 Ark. 96; Anderson v. May, 10 Heisk. 84. Inferentially the reasoning of the decisions in Denny v. Williams, 5 Allen, 1, and Townsend v. Hargraves, 118 Mass. 325, would lead to the same result.

No reason was advanced in Leroux v. Brown, supra, for the difference in the wording of the two sections of the English statute. And it is probably true that the legislators had no particular reason in mind for the different phrasings in sections 6998 and 6999, G. S. 1913, of our statute of frauds pertaining to similar transactions. No doubt, the main object in the enactment of both sections was to circumvent the occasion for perjury and consequent fraud, by providing for written evidence in respect to certain contracts. Browne, Statute of Frauds, § 136. We believe no distinction should be made between the two sections because of the use of the language "no action shall be maintained" in the one, and "every contract shall be void" in the other; but that the phrases, in the connection in which they are used, mean one and the same thing, namely, to make a valid contract in this state, concerning subjects mentioned in said sections, a writing is required. There have been

allusions to a distinction in Pierce v. Clarke, 71 Minn. 114, 73 N. W. 522; Spinney v. Hill, 81 Minn. 316, 84 N. W. 116, and other cases therein cited, but neither there nor here does such a distinction produce any material result, for, whether a contract comes within either of said sections, or section 7003 which reads as section 6999 as to this point, if there be a part performance, the rights of the parties are governed by the terms of the contract to the extent of the part performed. Kriger v. Leppel, 42 Minn. 6, 43 N. W. 484; Evans v. Winona Lumber Co. 30 Minn. 515, 16 N. W. 404.

We then come to the proposition whether the statute of frauds is referable solely to the remedy or procedure, or enters into and becomes a substantive part of the contract. If the latter, it follows that, if the contract be valid in the state where made and to be performed, the courts of a sister state should enforce it, unless clearly in contravention of the policy of its laws. What is the situation in the case at bar? The parties, being in Iowa, desired to contract with reference to the lease of property therein situate, and to have the payment of the rent therefor guaranteed to the landlord in Iowa. The guaranty to be valid was considered within their statute of frauds, and was accordingly expressed in writing, signed by the guarantor in strict conformity with that statute. It would seem that the parties took pains to comply with the only statute of frauds applicable to their contract. This writing, a perfectly valid and competent proof of that engagement when and where made and to be performed, should now be held competent and valid here, though slightly different from the form prescribed by our statute, in that it does not express the consideration. At most an insignificant variance, since it is generally held that a recital of "value received" is a sufficient expression of consideration—an expression which leaves the actual consideration wholly at sea so far as perjury is concerned. D. M. Osborne & Co. v. Baker, 34 Minn. 307, 25 N. W. 606, 57 Am. Rep. 55. Admitting this written evidence of the guaranty can surely not run counter to the policy of the forum here upon the subject of perjury. We are inclined to agree with this statement of the writer of section 690f, 2 Wharton, Conflict of Laws:

"In view of the anomalous results that follow from a strict application of the distinction made in Leroux v. Brown, and the tendency,

already noted, to repudiate that distinction, the better view is, perhaps, to regard a provision of the statute of frauds as substantive, rather than remedial, if it declares that no action shall be brought on the contract, or that the contract shall be invalid or void, even though the rest of the language of the provision (as is the case with the fourth and seventeenth sections of the original English statute and the other statutes modeled thereon) may, taken by itself, indicate that the statute was merely intended to prescribe a rule of evidence, rather than a rule of substantive law."

We apply that view of the law to the facts here. With us it would seem that, perhaps, more comity should be observed in the courts of the forum in respect to contracts made and to be performed in sister states, than the courts of England exhibit to foreign contracts. Our citizens move frequently and freely from one state to another. The code of every state in the Union, except one, we think, contains a statute of frauds. The one exception, New Mexico, holds the English statute to be in force there. Childers v. Talbott, 4 N. M. 336, 16 Pac. 275. The contracts covered may not be identical, and the wording of the statute in the different states is not the same. However, the fundamental idea of the statute is, that contracts coming within its provisions should be in writing. The form of this writing must necessarily be determined either by the law where the contract is made or where it is to be performed. When made where it is to be performed, there can be no controversy but that the law of that place fixes its form and manner of execution if within its statute of frauds. That particular statute then enters into the contract, and may be said to become a substantive part thereof. It should so be considered in the forum of every sister state where such contract is offered in evidence. The statutes of a sister state are now so readily accessible, that no argument, grounded on the difficulty of ascertaining that the writing conforms to the statute of frauds of the state in question, should have much weight in the court of the forum.

An instructive case, upon the effect of the laws subsisting at the time and place of the making of the contract upon the contract and its enforcement, is Edwards v. Kearzey, 96 U. S. 595, 24 L. ed. 793. In addition to the cases cited from Arkansas, Illinois and Indiana, sus-

taining appellant, we may say that the reasoning in Fisk's Appeal, 81 Conn. 433, 71 Atl. 559, seems to lead to the result we have arrived at in the case at bar. We may also add as opposed to our conclusions, besides those already referred to, the cases of Heaton v. Eldridge & Higgins, 56 Oh. St. 87, 46 N. E. 638, 36 L. R. A. 817, 60 Am. St. 737 and Kleeman & Co. v. Collins, 9 Bush, (Ky.) 460.

Holding as we do, that effect should be given this guaranty notwithstanding the omission to state a consideration therein, it was error to order judgment for defendant, unless the lease itself is illegal, for, admittedly, possession was held under it until after February 15, 1915, and no rent accruing after the first of that month has been paid. Considering the statutes of Iowa, so far as pleaded, and the admission in the answer, it fairly appears that when the lease was executed, and up to the date just mentioned, it was not unlawful to conduct a liquor saloon in the room leased. The lessees entered and evidently did carry on the business without objection on the part of any constituted authority until the fifteenth of said month. It appears from the lease itself, as well as from the allegations in the answer, that a "statement of consent" had been obtained, and a finding had been made of its sufficiency by the board of supervisors of the proper county. This, as we understand the law and decisions of Iowa, made it not unlawful to lease property in Des Moines for saloon purposes or to there operate a saloon while the finding of the sufficiency of the statement of consent remained unreversed. Taking an appeal does not revoke or suspend the finding of the supervisors. Hill v. Gleisner, 112 Iowa, 397, 84 N. W. 511; Hammond v. Waldron, 153 Iowa, 434, 133 N. W. 661; State v. Harrison, 159 Iowa, 67, 140 N. W. 223. The lease cannot, therefore, be held illegal in its inception. At any rate the pleadings do not so show; on the contrary, the fair import therefrom is that the contract when made violated no law, nor did the parties thereto intend in any manner to carry on the business involved so as to make it unlawful.

Nor do we see any merit in the claim that the laws of Iowa prohibited this respondent, a brewing concern, from executing this guaranty. Respondent was not interested in the business the lessees were to conduct on the premises and did not pay or guarantee their license bond. The law does not seem to forbid brewing companies from loan-

ing money or credit to retail dealers, in the hope of obtaining or retaining their trade by means of such favors. The prohibition goes only to an interest in the instrumentalities used and required in the conduct of the business as such by the retailer, and to an interest in the profits derived by him.

What we have said disposes of the appeal. But counsel have fully argued some questions which bear upon the amount of recovery, and, since they must be met in the final disposition of the case, we deem it proper to decide them now. We may assume the soundness of the proposition, advanced by respondent, that when a lease restricts the use of the premises let to a particular purpose or business, and thereafter by the state or municipal law it becomes unlawful there to carry on such purpose or business, the whole subject matter of the contract is, as it were, destroyed, and the covenants of the lease will not be enforced against either party. A contingency has then arisen so destructive of the substance of the contract that the courts imply an intention on the part of the parties that, in such event, it is to be at an end. Greil Bros. Co. v. Mabson, 179 Ala. 444, 60 South. 876, 43 L.R.A. (N.S.) 664; American Mercantile Exch. v. Blunt, 102 Me. 128, 66 Atl. 212, 10 L.R.A. (N.S.) 414, 120 Am. St. 463, 10 Ann. Cas. 1022; Hooper v. Mueller, 158 Mich. 595, 123 N. W. 24, 133 Am. St. 399; Heart v. East Tennessee Brewing Co. 121 Tenn. 69, 113 S. W. 364, 19 L.R.A. (N.S.) 964, 130 Am. St. 753; The Stratford, Inc. v. Seattle B. & M. Co. (Wash.) 162 Pac. 31.

But this is not a case of that sort. There was no change in the law. However, the parties well understood that conditions might arise to prevent the lessees from carrying on the business specified in the lease, and contracted with reference to their rights and liabilities in such an event. There can be no legal objection to such agreements. The one here made cannot be attacked as unreasonable or oppressive, nor as unlawful. No one can reasonably contend that this lease obligates the lessees to maintain a saloon whether or not the law permits, for it provides that nothing unlawful shall be done upon the premises. It is also clear that the provisions in the *addenda* contemplate the contingency when the saloon business may not be conducted and still the lease be in force, namely, in case of an adverse adjudication of the appeal

then pending. In case of such decision it is plainly intended that the lessees, and the other liquor dealers, should have time and opportunity to present a new consent petition or statement to the authorities. This would involve some time during which, of course, the saloon business could not be conducted. We believe the fair import of the lease is that the parties expected that events might transpire to cause a temporary suspension of business, still the lease was to continue with the obligation to pay rent until the lessees chose to terminate the same by notice as therein provided. We also think a fair construction to be that, although nothing is stated concerning the possible action of the city council, nevertheless its adverse action is to be included among the causes rendering the conduct of the business illegal, and giving the lessees the right to terminate the lease by the stipulated notice. The whole tenor of the document is that the premises were leased for liquor saloon purposes; that when it became impossible for the lessees to there carry on such business lawfully, through no failure of theirs, they might terminate the lease by notice. They have evidently acted on that interpretation of the lease, for the record contains a purported notice dated March 8, 1915.

Plaintiff contends that the word saloon in the lease should be given a broad meaning, so as to include a place of public entertainment, a dancing saloon or an eating saloon. Given this meaning, of course, there would be no occasion for claiming that the action of the public authorities, forbidding the sale of intoxicants in Des Moines, could impair the covenants of this lease. O'Byrne v. Henley, 161 Ala. 620, 50 South. 83, 23 L.R.A. (N.S.) 496; The Brewer & Hofmann Brewing Co. v. Boddie, 181 Ill. 622, 55 N. E. 49; Hayton v. Seattle Brewing & Malt Co. 66 Wash. 248, 119 Pac. 739, 37 L.R.A.(N.S.) 432; Hecht v. Acme Coal Co. 19 Wyo. 18, 113 Pac. 788, 117 Pac. 132, 34 L.R.A. (N. S.) 773, 777, Ann. Cas. 1913E, 258. But not only the nineteenth provision of the lease above set out in full, but the sixteenth, seventeenth and eighteenth provisions thereof make it plain beyond controversy, we think, that the saloon the parties had in mind was the grog shop, a place wherein are dispensed intoxicating liquors at retail. And we entertain no doubt that the intention of the parties was that when, through the final action of the public authorities or by legislation, it

became impossible for the lessees to lawfully carry on the business of selling intoxicating liquors on the premises, they should have the right to terminate the lease upon the terms and notice therein provided. The Goodrum Tobacco Co. v. Potts-Thompson Liquor Co. 133 Ga. 776, 66 S. E. 1081, 26 L.R.A.(N.S.) 498; Houston Ice & Brewing Co. v. Keenan, 99 Tex. 79, 88 S. W. 197, and others, cited by appellant, do not seem in point, for, as above stated, the parties here foresaw the uncertainty of being able to conduct the specified business on the leased premises and provided for the event. There is no occasion for the courts to interfere with the arrangement made.

Order reversed.