Robert W. Gacace, J.
This is a dispossess proceeding, brought on the grounds of violation of covenants in a lease, in that the tenant is allegedly using his premises for some purpose, other than living quarters: to wit, a doctor’s office. The premises in question are located in an apartment complex consisting of three modern 16-story Mitehell-Lama apartment house structures situated in the central part of the City of Yonkers, containing over five hundred separate units.
Pertinent clauses of the lease read as follows:
Paragraph Two: ‘ ‘ Tenant shall not use the demised premises or any part thereof or suffer the same to be used for any purpose, other than a private dwelling apartment ”.
Paragraph Eleven, 'Subdivision Two: “ If the demised premises shall be used or occupied for any purpose, other than as a strictly private one-family dwelling apartment * * *
Landlord may give notice to Tenant stating that the term of this lease shall expire on a date to be specified in said notice, not less than three days after the service ”.
Notice of termination was sent to tenant as of August 22, 1969. The testimony elicited at the trial by landlord’s employees .was that the landlord’s agents noticed hypodermic syringes at one time in the incinerator on the fourteenth floor where the tenant lives; that on several occasions people asked for Dr. Ortega’s apartment, and that people were seen sitting in the living room of the apartment. There is no evidence that the premises had been altered in any way to make it suitable for use as a physician’s office. The tenant denies the allegations and states that he works for the State of New York at Rockland State Hospital in a full-time capacity, and is also in the process of opening an office at 109 Her riot Street, Yonkers, for the purpose of commencing a private practice.
The landlord has the right to limit tenant in his use of the premises (Lyon v. Bethlehem Eng. Corp., 253 N. Y. 111). The words of art used in the instant lease are sufficient to create a restrictive covenant on the part of the tenant to use the premises for a “ private dwelling apartment ” only (Doherty v. Monroe Eckstein Brewing Co., 198 App. Div. 708, affg. 115 Misc. 175).
Although there is a plethora of cases regarding the construction and use of private houses for incidental business in the face of apparent absolute prohibitions in the deed, and the general rule in that regard is that some kinds of personal businesses, such as that of a physician or lawyer or real estate broker, may *541 be carried on in one’s dwelling house, if it does not inconvenience the neighborhood or change the general private character of the use of the building (Schnibbe v. Glenz, 245 N. Y. 388, 392; Smith v. Graham, 161 App. Div. 803, affd. 217 N. Y. 655; Tonnelle v. Hayes, 118 Misc. 339), the precise question, as to whether a tenant in a large apartment complex might benefit from the general rule in the use to which he puts his apartment in the face of such a restrictive covenant, has apparently not been decided.
There is a vast difference between the imposition of restrictive covenants upon a development of private homes and the restrictions imposed by a landlord for the protection of his property. The former is normally placed by an owner who then departs to some other venture. The latter is placed by an owner who remains and is responsible for the character of the buildings. The developer makes his profit and leaves; the owner-investor must make his profit from the successful operation of the structure. The beneficiaries of a restrictive covenant in a real estate development all have a similar interest in maintaining the character of the neighborhood. The tenant, as opposed to the landlord, has no investment in the property; he can leave for greener fields at the end of his lease term, and in short he has a minimal dependence upon the continuance of the structure in the condition that originally made him choose this building and this area in which to live, while the landlord has the maximum interest in keeping the structure and area as it was originally so that his investment will be protected.
Accordingly, this court holds that a tenant in an apartment house who agrees to a lease limiting his occupancy to that of a “Private dwelling apartment” may not use his apartment for his profession or business.
In the instant case, there is serious doubt as to whether or not the tenant actually carried on a business in the apartment. The court is of the opinion that the tenant may have had casual and intermittent connections with some patients in his apartment, but just as “ one swallow does not a summer make,” casual and intermittent contact between a professional man and his patient does not mean that a business is being conducted.
The court therefore finds that the petitioner has failed to prove by a preponderance of the credible evidence that the tenant was occupying the premises, other than as a residential tenant. Accordingly, the petition of the landlord is dismissed.