RAY-RON CORP., d/b/a Noble Roman's Pizza, Ronald W. Horsfield and Robert A. Yaggi, Jr., Appellants (Defendants Below),

v.

DMY REALTY COMPANY, Appellee (Plaintiff Below).

No. 49S02–8611–CV–01004.

Supreme Court of Indiana.

Nov. 24, 1986.

John W. Purcell, Hudnall A. Pfeiffer, Baker & Daniels, Indianapolis, for appellants.

Clarence H. Doninger, Patricia Seasor Bailey, Stark, Doninger, Mernitz & Smith, Indianapolis, for appellee.

SHEPARD, Justice.

Is an order granting summary judgment on a party's claim to the rightful possession of real estate an interlocutory order subject to appeal under Rule 4(B)(2), Ind. Rules of Appellate Procedure? We hold that it is.

In 1972, appellant Ray-Ron Corp. leased a free-standing building in the Chapel Way shopping center in Indianapolis from its owner, DMY Realty Company. Ray-Ron used this building to operate a Noble Roman's Pizza restaurant. The relationship proceeded on an agreeable basis until another tenant, Village Pantry, moved from the shopping center. DMY proposed to replace this tenant with either a Chinese restaurant or a restaurant called "John's Hot Stew." Ray-Ron objected to both, citing a clause in its lease by which DMY had promised not to "permit within the Shopping Center the sale of competitive food or beverage products...."

Unable to gain Ray-Ron's consent for its proposals, DMY filed a complaint requesting that the court void the non-competition section of the lease, or, alternatively, that the court declare that DMY's plans did not violate the clause. It also alleged that Ray-Ron had placed "arcade-type game machines" in the restaurant and that such violated a provision of the lease limiting the use of the premises "for a restaurant and/or retail sale of liquor and associated commissary and for no other purpose or purposes, without the written consent of the Lessor." On this basis, it requested an order directing Ray-Ron to vacate the premises. It later added a count alleging that Ray-Ron had also breached the lease by failing to pay as rent a percentage of the gross income from the machines.

DMY filed a motion for partial summary judgment. The motion stated that Ray-Ron had breached the lease by placing the game machines in the restaurant and by failing to pay rent based on the video machines, the record player, the pay telephone, a balloon machine, and a cigarette machine. It stated that DMY had given notice of these breaches and had elected to

terminate the lease. It requested a judgment affirming its right to do so.

The trial court granted this motion, stating simply: "Plaintiff's Motion for Partial Summary Judgment granted." DMY proceeded to file for a writ of assistance in evicting Ray-Ron. The latter brought an appeal to the Second District. The Court of Appeals determined, *sua sponte*, that the appeal was not timely under Rule 4(B)(2), Ind. Rules of Appellate Procedure, which provides for an appeal from interlocutory orders for "the delivery of the possession of real property or the sale thereof." It dismissed the appeal. *Ray-Ron Corp. v. DMY Realty Company* (1985), Ind.App., 485 N.E.2d 937.

■ Generally, decisions of a trial court upon motions for summary judgment involving less than all the issues in a cause are interlocutory in nature. However, an appeal may lie on those questions if the trial court expressly determines in writing that there is no just reason for delay and directs entry of judgment. It must also designate the issues or claims upon which it finds no genuine issue as to any material facts. Rule 56(C), Ind.Rules of Trial Procedure. Unless the trial court takes each of these steps, the decision is not an appealable order under Rule 56. *State v. Collier* (1975), 165 Ind.App. 239, 331 N.E.2d 784.

However, the separate basis for appeal of an interlocutory order exists for matters involving "the delivery of the possession of real property." Rule 4(B)(2), Ind.Rules of Appellate Procedure. The Court of Appeals determined that Rule 4(B)(2) did not apply because the court had not issued an "order" and suggested that such might be forthcoming as a result of DMY's request for a writ.

■ We conclude otherwise because Ray-Ron could not have appealed the merits of the trial court's ruling on the motion for partial summary judgment by appealing any order issued pursuant to the request for a writ. The parties clearly understood that all the remained to be done was to gain the court's help in removing Ray-Ron from the premises. DMY Realty's petition for a writ of assistance was a request for enforcement of the court's earlier determination, not any further litigation concerning the right of possession. Indeed, if Ray-Ron had filed an appeal from the granting of a writ, it would have been foreclosed from raising the issues underlying the merits of possession. *Rooker v. Fidelity Trust Co.* (1924), 196 Ind. 373, 145 N.E. 493, *cert. denied*, 270 U.S. 633, 46 S.Ct. 354, 70 L.Ed. 771; *TeWalt v. TeWalt* (1981), Ind.App., 421 N.E.2d 415. Where the acts remaining are only ancillary to the main question, an appeal may lie under Rule 4(B). *Cf., Estate of Garwood* (1980), 272 Ind. 519, 400 N.E.2d 758.

We therefore hold that the trial court's granting of summary judgment on the issue of termination of the lease was an appealable order under Rule 4(B).

Having determined that the trial court's order may properly be the subject of an appeal, we proceed to the merits of the determination that Ray-Ron breached its lease and that DMY was therefore entitled to retake possession. The essence of this question is: "How many video games does it take before a Noble Roman's becomes an arcade rather than a restaurant?"

■ A lease of property which specifies the purpose of the lease but does not prohibit other purposes is deemed permissive only. *Silkey v. Malone* (1953), 123 Ind.App. 395, 111 N.E.2d 665. Where, as here, the lease contains a prohibition on other uses, it is deemed restrictive. The lessor is entitled to limit use in accordance with the lease. *Schaub v. Wright* (1921), 79 Ind.App. 56, 130 N.E. 143.

■ While the definition of a given term of use, such as "restaurant," is a matter of law, the definition necessarily depends upon the commonly accepted meaning and the apparent intent of the parties. *See, Halloran v. Jacob Schmidt Brewing Co.*, 137 Minn. 141, 162 N.W. 1082 (1917). Though the commonly accepted meaning of words might well be the subject of empirical evidence, courts frequently take notice

of the definition of ordinary words. *Schaub*, 79 Ind.App. at 58, 130 N.E. 143. Even where a lessee puts the premises to use in a way outside the term of the lease, such action may not be regarded as a breach if it is casual and intermittent. *Galloway v. Ortega*, 61 Misc.2d 539, 541, 305 N.Y.S.2d 546, 549 (1969) ("one swallow does not a summer make"). Such treatment also seems appropriate for uses which could be deemed incidental to the main purpose of the lease.

Appellee provides a decent definition of the word "restaurant" as "an establishment where meals are served to customers." However, we are satisfied that the legal definition of restaurant does not confine a proprietor to providing only food and drink. Ray-Ron points out that Noble Roman's restaurants customarily show movies as entertainment. It is unlikely that anyone comes simply to watch the movies without buying food or drink. Such amenities are novel when they first appear on the scene; eventually, the public comes to regard them simply as a part of the ambience. No one would seriously claim that Noble Roman's is a "movie house" rather than a restaurant because it shows movies.

Similarly, we hold that the presence of seven video games does not convert a pizza restaurant into a "video arcade." The facts presented to the trial court through affidavit indicate that the sale of food and drink generated ninety-four per cent of the restaurant's total income. Certainly, an establishment in which, say, two-thirds of the income is derived from banks of video machines and one third comes from the sale of food might be labeled an "arcade." A restaurant with three-quarters of a million dollars in annual revenue from the sale of pizza and beer does not lose its status as a restaurant because there are seven machines which permit the patrons to play Pac-Man and Galaga.

Whether Ray-Ron violated its lease by failing to include revenue from sources other than food and drink is, of course, a separate issue. However, this claim is subject to Ray-Ron's defense of waiver, and

DMY's affidavits were an inadequate basis for resolving this question.

The trial court's decision granting summary judgment is vacated and the cause remanded for further proceedings on the merits.

GIVAN, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., dissents without separate opinion.