520

Austin E. Griffiths and Lewie Williams, both of Seattle, Wash., for petitioners.

Gerald Shucklin, Asst. U. S. Atty., of Seattle, Wash., amicus curiae.

BLACK, District Judge.

Monday of this week the petitioners filed the petition now before the court. It alleges that the petitioner, Mary Asaba Ventura, resides in Seattle and is an American-born citizen of Japanese ancestry, that her parents reside in this state but were born in Japan, and that her husband, also a petitioner and residing in Seattle, is a citizen of the Philippine Commonwealth.

The petition further alleges that said petitioner wife of Japanese ancestry is unlawfully and arbitrarily restrained of her liberty by the written orders and commands of John L. DeWitt, Lieutenant General, United States Army, commanding Western Defense Command and Fourth Army, whose headquarters are alleged to be in California.

The petition further alleges that such restraint of liberty consists in her being ordered "on pain and penalty of military or other punishment", since March 27 last, to remain in her home between eight o'clock each evening and six o'clock each morning, and ordered at other hours not to go more than five miles from her residence except for certain purposes and ordered to remain in the the area until some future evacuation.

She contends in such petition that such orders are in violation of certain specified provisions of the Constitution of this state and of the United States. She avers that a proclamation of said Commanding Officer provides "that any person violating the proclamation will be subject to the criminal penalties provided by Public Law No. 503, 77th Congress, approved March 21, 1942."

The petition asserts that she is "loyal and devoted to the Constitution, laws, institutions and customs of her country"; that "the courts of the United States and of the State of Washington are sitting legally and normally" in this state and city and "that there is no rebellion or state of invasion" in this city or state.

The petition states on information and belief that "the local agents and representatives of said Commanding General * * * to enforce and execute said orders and commands and to restrain petitioner of her liberty are the following: The Federal Bureau of Investigation; the War-Time Civil Control Administration, having its office at * * * Seattle; and the War Draft Board for District No. 10, in said City of Seattle."

The petition then alleges that said Commanding Officer is acting under "a certain

Executive Order, of date February 20, 1942, issued by the President of the United States as Commander-in-Chief of the Army and Navy, and which Order purports to authorize and direct said Commanding Officer to do the matters and things" complained of.

The petition finally alleges that "she has no dual citizenship, owes no allegiance to any country other than the United States, and that her birth has not been registered with any consul or other officer of Japan, and that no act has been done with her knowledge or consent in any way whatever to cause her to be in any sense or manner a citizen or subject of the country or Empire of Japan."

In support of the petition the following exhibits are attached: Public Proclamations No. 3, dated March 24, 1942, and No. 4, dated March 27, 1942, and three letters to her counsel in substance advising that the petitioning wife is subject to the same provisions as others of Japanese ancestry.

Monday when such petition came to my attention I requested that the United States Attorney be advised of the same. Late Monday evening I heard argument and citation of authorities from counsel for petitioner and also heard Mr. Shucklin, Assistant United States Attorney, who appeared as a friend of the court and as such suggested that this court had no jurisdiction of the Commanding General, who is in San Francisco, that there was no occasion for any relief because neither of the petitioners is imprisoned or in the custody of anyone and that moreover there was no one to whom any order to produce petitioner in court could be properly directed.

Petitioners' counsel Monday, as well as today, have advised me that their petition was based upon Ex parte Milligan, 4 Wall. 2, 18 L.Ed. 281. A reading of that case discloses that diligent endeavor has been made by petitioners' counsel to duplicate the essential holdings of that United States Supreme Court decision of about seventy-six years ago. Petitioner also cited 14 Hughes' Federal Practice, § 13733, page 606, and several sections of 29 Corpus Juris. This morning during further presentation petitioners called my attention to a case in 38 F. Supp. at page 183, entitled "United States ex rel. Filomio v. Powell et al.", which is a decision of the United States District Judge of New Jersey given on April 10, 1941, at the instance of one who was, over his protest, inducted into the United States Army through the action of his local Draft Board.

It appears to me that a soldier so inducted into the Army is in a very different position than is the petitioner wife in the instant case. Counsel for petitioners have also called my attention to Ex parte Meservy, 80 S.C. 285, 61 S.E. 445, and 25 Am.Jur., page 222.

Mr. Shucklin on Monday suggested that Wales v. Whitney, 114 U.S. 564, 5 S.Ct. 1050, 29 L.Ed. 277; Baker v. Grice, 169 U.S. 284, 18 S.Ct. 323, 42 L.Ed. 748; and Public Law No. 503, 77th Congress, approved March 21, 1942, would disclose to the court that petitioners were not entitled to any writ or to any order directed to any one. He has this morning called my attention to three other cases, which three cases I do not consider have any particular bearing on the matter at issue and I do not therefore name them.

That petitioners' counsel must have appreciated some difficulty as to the contents of the writ and the identity of those to be served appears in the prayer, which reads: "that said Commanding General, his officers, soldiers, agents and representatives be commanded and required to bring, produce or allow your petitioner, Mary Asaba Ventura, to come before Your Honorable Court."

It is clear from the petition that said Mary Asaba Ventura last Monday afternoon and this morning could have freely come in person on her own initiative if she so wished. No such "commanding general, his officers, soldiers, agents, or representatives", nor the F. B. I., the War-Time Civil Control Administration, any War Draft Board, nor any proclamation, order, command, executive order, law, or circumstance mentioned or implied by the petition would have prevented that. So far as I know she may be in the hall to the court room listening to this opinion through the open door. Her husband was here Monday afternoon. I have seen him here earlier this morning and I see him here now.

The writ of habeas corpus is a valued and vital part of our American freedom. It is an ancient writ. It may antedate Magna Charta. Our Federal and State Constitutions guarantee its protection for our liberties. It is an essential part of our American way of life. But it is only available to one unlawfully restrained of their liberty. The restraint must be both unlawful and physical. Mere moral restraint is not enough. Ordinarily unlawful imprisonment or unlawful custody is essential.

■ ·After construing the petition and attached exhibits in the light of the arguments made to me Monday and today and after reading the authorities cited and coming to my attention on my own search it seems apparent that there is no such restraint of the petitioning wife as under the authorities would entitle her to any relief at the present time. Technically it appears to me that her complaint is, to say the least, very premature. She wishes to be relieved of an imprisonment before any such occurs.

Her counsel it seems to me in effect, seek a declaratory judgment decreeing that if in future she should violate such proclamations and orders she cannot then be taken into custody. Apparently they ask this court in advance of any arrest of such petitioning wife to declare such recent Act of Congress and such recent Presidential Executive Order unconstitutional, null and void. But I am not disposed to decide this question upon the technical ground that the petitioners have come to court too soon, without at least mentioning some phases of the merits of the matter.

The United States is at war—a war such as this nation and this world has never seen before. We are in a recently declared Military Area. The orders, commands and laws complained of are intended to safeguard such Military Area. Prompt decision as to the petition instead of academic treatment and many citations seems required.

I do not believe that the specific question before me has been decided in any written opinion of any court. Yet I have no doubt that the same question which is before me now will soon, or perhaps this very instant does, confront some other judge along this coast.

But if I assume that counsel for petitioners are correct in their contention that the petition shows constructive custody then there comes this question: Is such unlawful as alleged? If not unlawful, of course, there should be no writ.

Petitioners' counsel insist that the case of Ex parte Milligan mentioned earlier by me establishes the illegality of the so-called Curfew Law and the other orders of which complaint is made. But I do not so read that case. It was decided in 1866, shortly after the Civil War had ceased. But the petitioner there had actually been arrested, actually tried without a jury, actually convicted, actually sentenced to early death by a military commission. He was actually imprisoned by the military, yet the Federal and State Courts were there to provide a forum for his trial. He was a citizen and not connected with the Army. Our Supreme Court held the military tribunal had no right to try him in Indiana since there was neither invasion, rebellion, nor martial law.

In the present situation the petitioner wife has never been arrested. Moreover, she is told that if she violates the orders she will be punished according to a recent Act of Congress. Certainly that implies that in such event she will be tried by Federal court, represented by counsel, allowed a jury, granted all the Constitutional guarantees. Then she will have the opportunity to assert the unconstitutionality of the Congressional Act involved.

That this implication that the courts and not the army will be asked to enforce such Act is correct appears from a newspaper item I saw in this morning's paper which states that my associate and Senior Judge, Judge Bowen, pronounced a sentence yesterday for a violation of a portion of the order complained of.

The question here should be viewed with common sense consideration of the situation that confronts this nation now—that confronts this coast today. These are critical days. To strain some technical right of petitioning wife to defeat the military needs in this vital area during this extraordinary time could mean perhaps that the "constitution, laws, institutions" of this country to which her petition alleges she is "loyal and devoted" would be for a time destroyed here on Puget Sound by an invading army.

In the Civil War when Milligan was tried by military commission no invasion could have been expected into Indiana except after much prior notice and weary weeks of slow and tedious gains by a slowly advancing army. They then never imagined the possibility of flying lethal engines hurtling through the air several hundred miles within an hour. They never visioned the possibility of far distant forces dispatching an air armada that would rain destroying parachutists from the sky and invade and capture far distant territory over night. They never had to think then of fifth columnists far, far from the forces of the enemy successfully pretending loyalty to the land where they were born, who, in fact, would forthwith guide or join any such invaders. The past few months in the Philippines, of which the petitioning husband is a citizen, establish·that apparently peace-

ful residents may become enemy soldiers over night. The orders and commands of our President and the military forces, as well as the laws of Congress, must, if we secure that victory that this country intends to win, be made and applied with realistic regard for the speed and hazards of lightning war.

Since planes and ships and tanks now speed attacks the old-time restricted fort on small promontory or elevated rock will not suffice. The President, military forces, and Congress may perhaps consider all the military area where petitioners live as in effect an actual military fortress and a factory arsenal.

During the Civil War would anyone have been surprised at strict precautions as to movements of civilians within the confines of a Civil War fort or arsenal? Was not the government then in fort or arsenal entitled to exercise discretion as to which of such civilians should be permitted to move about in such a fort at night or to move at all around such an arsenal?

The petitioners allege that the wife "has no dual citizenship", that she is in no "manner a citizen or subject of the Empire of Japan." But how many in this court room doubt that in Tokyo they consider all of Japanese ancestry though born in the United States to be citizens or subjects of the Japanese Imperial Government? How many here believe that if our enemies should manage to send a suicide squadron of parachutists to Puget Sound that the Enemy High Command would not hope for assistance from many such American-born Japanese?

I am mindful that counsel have suggested to me today that the marriage of the petitioning wife to a citizen of the Philippine Commonwealth gives her an added right to remain in this military area, although others of similar ancestry might have a lesser right. With that contention I cannot agree.

The law enacted by Congress and the President's orders and commands indicate that those who are charged with the defense of this area, of our Constitution and our institutions, deem Puget Sound to be a critical military area definitely essential to national defense.

I do not believe the Constitution of the United States is so unfitted for survival that it unyieldingly prevents the President and the Military, pursuant to law enacted by the Congress, from restricting the movements of civilians such as petitioner, regardless of how actually loyal they perhaps may be, in critical military areas desperately essential for national defense.

Aside from any rights involved it seems to me that if petitioner is as loyal and devoted as her petition avers she would be glad to conform to the precautions which Congress, the President, the armed forces, deem so requisite to preserve the Constitution, laws and institutions for her and all Americans, born here or naturalized.

I cannot, of course, control her attitude. But since I considered in the first instance she has no right to relief under the allegations of her petition I should deny the same. Certainly this petitioner now has no legal right in any event to a writ to release her from an imprisonment that has not yet occurred. She has no right to ask the court to require some one to bring her to a court which she can voluntarily attend. The petition should be and is denied and dismissed. Exception is allowed.