### UNITED STATES v. JENTZSCH.

### Civ. No. 1718.

District Court, D. Maryland.

Dec. 16, 1942.

Bernard J. Flynn, U. S. Atty., and C. Ross McKenrick, Asst. U. S. Atty., both of Baltimore, Md., for United States of America.

Murray MacNabb, of Baltimore, Md., for defendant.

COLEMAN, District Judge.

This is a proceeding brought by the Government under the provisions of Section 338 of the Nationality Code enacted October 14, 1940, 8 U.S.C.A. § 738, for the purpose of revoking and setting aside the order of this court admitting the defendant, Wilhelm Robert Jentzsch, to citizenship on April 10, 1933, and cancelling the certificate of naturalization issued to him, on the ground that such order and certificate were fraudulently and illegally procured by him in that the representations in his petition for naturalization were false and fraudulent because he was not, in fact, —as he was required to state under oath, and did so state, in that petition,—attached to the principles of the Constitution of the United States at the time he filed this pe-

tition, nor during the five years prior thereto; did not in good faith intend to renounce absolutely and forever all allegiance and fidelity to the German Reich of which he was then a subject, but in fact intended to retain allegiance and fidelity thereto, and did not in fact intend to reside permanently in the United States; and likewise, that all of the representations made by defendant in his oath of allegiance, which he was required to take, and did take at the time he was naturalized, were false and fraudulent, in that he did not in fact renounce and abjure all allegiance and fidelity to Germany; because he did not in fact intend to support the Constitution and laws of the United States against all enemies, foreign and domestic; and because he did not in fact intend to bear true faith and allegiance to the same, but in fact intended to remain a subject of the German Reich and to maintain allegiance thereto.

Defendant has denied these allegations of the complaint and a full hearing has been had, in the course of which a number of witnesses were called to testify by both the Government and the defendant.

The defendant was born in Erfurt, Germany, on July 15, 1897. He came to the United States for the first time on December 16, 1926, filed his declaration of intention to become an American citizen on December 15, 1928, and his petition for citizenship on March 11, 1932, and was naturalized on April 10, 1933. His wife, also a citizen of Germany, he had married some years prior to bringing her, in 1929, to this country, accompanied by his three daughters and one son. He has another son born in this country.

Defendant served for four years as a private in the German Army in the last World War, which means that when he entered the German Army he was only seventeen years old. His trade is a sheet-metal worker. For some two years he has been and still is employed in the Quartermaster's Depot, United States Army, at Camp Holabird, Maryland, in work allied to his former trade, but it was stated in the course of the hearing by one or more of the Government witnesses that, as a result of the Government's investigations, the employment of the defendant by the Army is temporary only, and that regardless of the outcome of this proceeding, the Army will terminate this employment because defendant is believed to be unde-sirable in view of past subversive activities. However, he has never been prosecuted for any offense since his arrival in this country.

In support of its claim that the representations of the defendant made in his petition for naturalization and his oath of allegiance were false and fraudulent for the reasons which have already been set forth, the Government relies upon testimony, and upon the inferences based thereon, as to acts and statements of the defendant all of which were subsequent to the time when he became naturalized, that is, subsequent to April 10, 1933, and virtually all of which were prior to our entrance into the present War, but claims that these acts and statements require the conclusion that at the time he filed his petition for naturalization and took the oath, defendant did so with the mental reservation of loyalty and allegiance to Germany, which he swore to renounce. In other words, the Government contends that what the defendant said and did subsequent to 1933 establishes fraudulent conduct at the time he applied for and obtained his American citizenship.

After settling in Baltimore, the defendant was employed at his trade intermittently until 1935, when he became a subscription solicitor for the Baltimore Daily Correspondent, a German language paper, which is still being published, and remained with that publication until 1939. He became secretary, in 1936, of a German society known as the Krieger Bund, which he claimed was a German War Veterans' organization whose formation long antedated the Nazi regime and in fact the last World War, but which the Government claimed was dominated by the Nazis and the German-American Bund. The defendant was also a member of the Kameradschaft Bund. This organization was begun as a local organization in Baltimore in 1936, by non-naturalized German members of the organization known as Friends of New Germany following an alleged requirement by that organization of American citizenship as a condition precedent to membership. The defendant attended various meetings of these organizations. The Kameradschaftsbund ceased to function officially in the latter part of 1939. Defendant denied that he was ever a member of the organization known as the Friends of New Germany, but its treasurer testified that he collected dues for this society from the defendant, and

there was other testimony indicating defendant's connection with this organization. In our opinion rendered this day in United States v. Polzin, 48 F.Supp. 476, we have described this organization, its relation to the German American Bund and the latter's activities, and we deem it unnecessary to repeat here what we said in that opinion. Defendant was discharged by the Baltimore Daily Correspondent because of his German affiliations, just referred to. Defendant sent one of his sons, in 1938, to a camp in New Jersey known as Camp Nordland, which was notorious as a hotbed for Nazi training and propaganda, the only excuse for doing so which the defendant gave being that he did not know the real character of this camp.

The testimony is replete with instances of pro-Nazi proclivities, although no evidence was introduced of defendant having been to Germany or having corresponded with anyone there after 1929, when he brought his wife and children to this country. For example, when one of his daughters died in 1938, funeral services were held in Baltimore with her coffin draped with the Swastika flag. At German outdoor meetings held in Baltimore in 1937, 1938 and 1939, defendant and his family participated in the distribution of Nazi literature. It is a fact, however, that all of the testimony just referred to relates to conduct and statements of the defendant since he was naturalized and prior to our entrance into the present War. In fact, no direct evidence of any kind has been presented showing any subversive tendencies either prior to the date of defendant's naturalization in 1933, or within two or three years after that time; and none subsequent to our entrance into the War, except the very fragmentary testimony of a Baltimore police officer that on April 23, 1942, while in the course of his police duties, he overheard the defendant say, while on or near his home premises, that he was "a full blooded German and I don't care who knows it." The police officer further testified that this statement was apparently made in the nature of a soliloquy, that he did not investigate the reason for the defendant making such a statement, and in fact, paid no further attention to it.

Defendant's present foreman and others, without exception, testified that defendant at the present time is performing satisfactorily the work for which he is employed at Camp Holabird and that, in fact, he is an especially skilful worker in his particular trade. Defendant maintained vigorously throughout the trial that he is and has been, ever since his arrival in this country, entirely loyal to it; that he came here following his tragic experiences in the German Army in the last World War to escape the economic panic that followed it, and that whatever association he has had in this country with German organizations was merely in furtherance of the work for which he was employed by the German paper, already referred to.

There can be no question but that subsequent acts or statements may be sufficient to prove a particular state of mind at a given time. It is equally true that the fact that nothing may have happened subsequent to that time to call forth a manifestation of the particular state of mind, is not in and of itself sufficient to warrant the conclusion that that particular state of mind may not, nevertheless, be presumed to have existed at the earlier time. In other words, the fact that subversive societies, membership in which would have been open to the defendant had they existed, were not, in fact, in existence in Baltimore at or about the time defendant was naturalized, or the fact that this country was not at war during the time when the defendant is alleged to have conducted himself in a disloyal manner and to have made disloyal statements, is not in and of itself conclusive of the impossibility or improbability of disloyalty existing at the time of naturalization. However, since the statute upon which revocation of citizenship can alone be predicated requires proof of fraud or illegality at the time citizenship was obtained, there must be satisfactory proof that such actually occurred at that time. Does such proof exist in this case? This is the question that we must answer.

■ We conclude that such proof does not exist in this case for the same reasons which we have given at length in this court's opinion just rendered in United States v. Polzin, 48 F.Supp. 476. In fact, we are satisfied that the testimony in the present case is even weaker in support of the Government's contention that the defendant's citizenship should be canceled. Here, there is not only no evidence of any subversive acts, utterances or tendencies prior to his naturalization in 1933 or for some time thereafter up to our entrance into the War, and none subsequent to our entrance except one fragmentary

utterance, already referred to, made in April, 1942, to which cannot be given much weight; but if we give full credence to such activities and utterances of the defendant as were testified to as having occurred between 1935 and our entrance into the War, although in no sense to be excused but indeed are subject to the severest condemnation, some of them at least were probably of a less serious character than were the acts, utterances and tendencies of Polzin in the other case during the corresponding period. Thus, just as in the other case, we conclude that the Government's bill of complaint must be dismissed. However, we deem it appropriate to add, just as we did in that case, that neither our conclusion, nor anything contained in this opinion, is intended to be construed as in any sense an abridgment of such right as the Army may have under its very broad military powers and in the exercise of its discretion in the public interest, to require Jentzsch to take up residence and seek employment outside of any particular part of the country which has been or may hereafter be declared a military area, and in which Jentzsch may now or hereafter reside or work. Such authority on the part of the military establishment unquestionably exists with respect to all persons, whether they be citizens or aliens, in time of war and is defined in certain laws and regulations passed pursuant thereto by both the civil and military authorities, to which, however, we need not specifically refer in this opinion.

For the reasons stated, the Government's bill of complaint must be dismissed.