**UNITED STATES v. 43,355 SQUARE FEET OF LAND IN KING COUNTY, WASH., et al.**

**No. 781.**

District Court, W. D. Washington, N. D.

Aug. 11, 1943.

On Plea to Jurisdiction Sept. 21, 1943.

F. P. Keenan, Sp. Asst. to Atty. Gen., and Ivan Merrick and Ernest T. Falk, Sp. Attys., Department of Justice, both of Seattle, Wash., for petitioner.

Tracy E. Griffin and Roy D. Robinson, both of Seattle, Wash., for respondent Merchants Transfer & Storage Co.

Lewis L. Stedman, of Seattle, Wash., for respondent Skinner & Eddy Corporation.

BOWEN, District Judge.

The first point, it seems to me, to require consideration by the Court is that one made by respondents (through Mr. Griffin) that the Acting Secretary of War was not shown to have authority to initiate these proceedings in the manner that has been done. I am, however, of the opinion that the statutes cited and relied upon by the Government do authorize the Acting Secretary to institute these proceedings and that this act of the Acting Secretary, Mr. Patterson, is sufficiently shown to be authorized and that the same is in fact authorized and that the objections of the Respondents upon that ground should be and are overruled.

As contended by petitioner, the Court is of the opinion that the case of the United States v. State of Montana, reported in 9 Cir., 134 F.2d beginning at page 194, is authority for the principle or rule

of law that when the Government Department through its proper official such as the War Department in good faith determines and finds necessary that the Government acquire by condemnation a certain piece of property owned by a citizen, that such determination is binding upon this Court. The Second War Powers Act, 50 U.S.C.A. Appendix § 631 et seq., gives the Department heads in connection with the condemnation the right, as a preliminary and advance step in the proceeding, to, under the conditions stated by that statute, obtain possession for the Government before the Government takes title to the property, but in my opinion it is required that the Government proceed in good faith, constructive good faith as well as good faith in fact, and that the proceeding be not arbitrary or capricious. And I think that this Court is required upon having that issue tendered to hear the testimony relating to it and to consider the issue and to determine the issue upon the evidence before the Court.

In that connection I want to say I now believe there was properly admitted certain evidence which was admitted over petitioner's objection upon the ground announced by the Court that respondents should thereby have the opportunity of making their record even though the evidence might be properly excluded under the rule of United States v. State of Montana, supra. I now believe such evidence was properly admitted under the issue raised by respondents' contention of bad faith, etc.—an issue made clearer to the Court as the trial progressed. The Court as the trial progressed became more clearly aware of respondents' theory that the petitioner has not exercised good faith but has acted arbitrarily and capriciously in selecting this property for condemnation and possessory proceedings.

If this proceeding had been instituted against this property as the first piece of property in this locality taken or to be possessed by the Government, and if the Government had shown the need of warehouse space for the handling and storage of army and navy ordinance, and army and navy supplies of all kinds, and before the Government acquired any other such space, or before the Government required any other such space which was anyway near adequate to meet its requirements, I am certain that the Court would have no difficulty in finding that the proceeding was in good faith.

The Court must consider all of the facts here shown. Among them the Court should consider and has considered the nature of the Government's property to be stored on these premises, whether that property is of such a nature as to indispensably require this particular space now; whether it could be just as well cared for out in the open in the weather, or whether it could be just as well cared for on some other premises; whether the facilities for storing it must be ideal from the standpoint of ventilation, care and custody; whether it needs constant attention or guarding against deterioration by action of the elements or the inherent nature of the goods themselves; whether the amount of other warehouse space in the vicinity of the property in question already acquired by the Government is sufficient for the Government's present or reasonably prospective needs; whether such space of this kind as the Government has already acquired and now has control of is sufficient for its needs; whether the Government warehouse space already acquired in the vicinity is being efficiently used by the Government for that purpose or whether or not, after acquiring it, the Government has immediately converted its use to some other use so as to indicate that it wasn't warehouse space that the Government then needed or now needs, or whether the Government needs the space for some purpose other than warehousing and storing.

In connection with the consideration of the nature of the Government property, thought by the Government to need these facilities, we should consider the circumstances as shown by the evidence that it consists or is expected to consist of metal pipe, metal pipe fittings, metal ship repair parts, and ships stores; whether such property could be as well accommodated on premises now owned or controlled by the Government.

We should also consider, and the Court has, the emphasis laid by the petitioner's witnesses on the development program at or near the Port of Embarkation in the vicinity of this property involved in this action such as the desire as expressed by these witnesses and concern on their part about proper policing and fire control of the Government's property in that vicinity as affected by this property here in question remaining without and not within the Government control. We should consider whether or not the Government's action

here is influenced by such a desire as that just mentioned, that the Government might find it more convenient to police and guard against fire hazards its property already acquired if this property was also acquired; whether or not, so far as policing and protecting against fire hazards are concerned, the public authorities which now have jurisdiction over this property can adequately deal with the situation; whether or not the situation of this property in its relationship with other property nearby which the Government already has acquired is in the nature of a mere remnant which, merely for purposes of policing and control as a whole, is an outstanding object in the Government's program, influencing the Government's determination to acquire this property.

We should also consider the circumstance of the convenience of the whole public as affected by the presence of the Army and its work in the community, and as affected by the presence of the civilian population, and as to whether or not the civilian population will really suffer in its services of necessary supply if this property should be withdrawn from such supply servicing to civilians. That as well as all of the foregoing it seems to me might very well have some bearing upon the Government's good faith in this proceeding.

I think the Court ought to say that it believes that the evidence shows that such convenience is great on both sides, considering Seattle's Port of Embarkation and the movement of military supplies through that Port at this time. I didn't mean in that statement to include the need of this specific property. I meant the need in the community which the civilians have with respect to this kind of a service and the need which the Army has with respect to this kind of a service.

If the Army didn't have any other warehouse space nearby or reasonably nearby, that would be an added fact favoring the Government's position which doesn't now exist. The truth is that the Army does have a lot of warehouse space nearby, and has had other warehouse space which has been converted to uses other than warehouse and storage uses.

The evidence is that so far as service to the civilian public is concerned, there isn't any other service which is comparable to this and that this warehouse and storage service is practically indispensable to the public.

I believe the Court could more easily resolve this question were it not for the circumstance that part of the valuable warehouse and storage space used for storage before acquisition by the Government has, after acquisition by the Government, been converted to office space. That is a strong circumstance that naturally leads to the inquiry: What use, in fact, is the Government going to make of this space after it gets it; will it use it to store this iron pipe and metal pipe fittings and consumable ships stores or will it after days or weeks convert this warehouse to other purposes such as office uses? That inquiry might just as well be made as to this property now as it could have been made as to the other warehouse property before the government acquired it and converted it to office use. The evidence is undisputed that the former State Liquor Warehouse and the Russell Warehouse were actually converted into office uses after they were condemned by the Government during this war.

Upon a consideration of all of the evidence before the Court on this issue, I have no hesitancy in saying I do not believe that it is necessary for the war effort that the Government now acquire this warehouse as a place to store metal pipe, metal pipe fittings, metal repair parts for ships, and ships' consumable stores. Everyone knows that such property is customarily stored in any kind of a building. Some of it is stored outside. Some of those metal goods are often stored outside for a limited or longer period of time; and ships' consumable stores may be stored in any kind of a building that has a shelter over it such as docks and ordinarily is stored on any dock in Seattle.

So far as having these kinds of property, the metal pipe, pipe fittings and the ship repair parts, stored at a place where it can be used on a ship while it is lying at any berth—for instance a berth at the Port of Embarkation—there is no showing here that that is a situation any different than that attending private operation of ships.

The Court's view of the evidence might be strengthened from the standpoint of the good faith of the Government in taking this property if the class or nature of the property to be stored in this place was something that had a peculiar need for the protection of this character of a building or possibly if it was Army or Navy Ord-

nance of some kind. Any kind of a building will house a pipe fitting or a metal pipe. And a shelter of any kind, or sometimes no shelter at all for a limited time anyway, would be sufficient—any place where it can be segregated and protected.

In making these observations and stating these findings and conclusions the Court does not say or imply that any particular officer of the Government or any particular military man has gone out with a deliberate attempt to act facetiously with respect to the public generally. So far as I know each inspector and appraiser of this property may have done every act that he did in response to the order of some superior located in some other place.

The Court's conclusions relate to the situation as a matter of law, not as a matter of any express design going to the question of proper lawful or other kind of motives of the particular official or military man who may have made an appraisal or an inspection or a report. Rather the Court's conclusion is more the result of the Government's past action in converting good warehouse space into office uses, and of the possibility that in view of past acts in respect to similar property the Government may change its program as to this property tomorrow.

 I want to say at this point that the contention made by Counsel for the respondents, in effect that we should consider the future financial welfare of the respondents, offers no criterion by which to determine whether or not the Government may in good faith condemn these respondents' property for a Government use. As observed by Counsel for the Government, the property of all citizens is held subject to the paramount right to be in good faith condemned for a public use by the Government of the United States. And the fact that it may prove a hardship upon the owner of the property is no defense against the exercise by the Government of that paramount right of eminent domain.

 This evidence and all of the evidence in the record above discussed have been discussed by the Court in connection with this issue of whether or not the Government in fact or in law has in this proceeding acted capriciously and arbitrarily with respect to this particular piece of property. And the Court is of the opinion, and finds and concludes, that such action of the Government in this particular case, in the light of all of the evidence here introduced and above discussed, is capricious and is arbitrary, and therefore the Court declines to enter an order granting to the Government leave to take possession of this property as requested by the Government.

### On Plea to Jurisdiction.

The Court on August 11, 1943, originally filed its opinion in this case upon substantially the same questions here raised on this plea to jurisdiction. This Court at this time, after further considering this matter and after considering the forceful arguments of Counsel on both sides, is still of the same opinion and adheres to the same views which were expressed in that opinion filed August 11, 1943.

 It might now be appropriately added that this Court is of the opinion that in time of war the civil power of the Government is supreme over the war powers of the Government.

 I also cite the decision of the Circuit Court of Appeals for the Eighth Circuit in Carmack v. United States, 135 F.2d 196, wherein the Court, at page 200, paragraph [2-4], held that: "While the Government as a sovereignty has inherent power to take private property essential to the public welfare, it exercises that power ordinarily pursuant to specific legislation. The right to determine what is a public use and when there is a public necessity for taking specific property is, in the first instance, a legislative rather than a judicial question, but whether in carrying out the purpose of Congress, the officer has acted capriciously or arbitrarily is a judicial question. [Citing]. Necessity must be combined with a public use and a necessity for the public structure does not, in the circumstances here presented, imply a necessity for taking this particular property already devoted to a public purpose. That necessity was determined by the Acting Administrator of Federal Works Agency, and whether in determining the issue he acted arbitrarily or capriciously, should be decided by the trial court."

 This Court believes that the opinion of the Eighth Circuit Court of Appeals in that case applies to the situation in the case before the Court here, where the Government's position in effect is that, as to administrative acts of Government War Department officials under the Second War Powers Act, 50 U.S.C.A. Appendix § 631

et seq., there is no judicial review except a review which must result in judicial approval, never disapproval, of administrative action. That I believe is not the law. If it were, a citizen would have no relief in any case against arbitrary or oppressive action of administrative officials.

 In view of what the Court said in the opinion filed on August 11 and these further observations, the Court does now express the opinion that it does have jurisdiction over this phase of the matter and does now overrule the plea to the jurisdiction and does overrule the objections stated in that plea by the Government to the jurisdiction of the Court.