# HENRY L. ORME v. ATLAS GAS AND OIL COMPANY.[1]

March 24, 1944.

No. 33,629.

*Jackson & Yackel,* for appellant.
*Paul D. Schriber,* for respondent.

[1]Reported in 13 N. W. (2d) 757.

28

PETERSON, JUSTICE.

This is an action to recover $160 rent alleged to be due for the months of March and April 1943, under a written lease for a five-year term executed on December 1, 1940, by plaintiff as lessor and defendant as lessee.

The lease provides that the lessee's "principal business" upon the premises was "the operation and maintenance of a gasoline filling and greasing station." The lessee covenanted that it would not use or permit the premises to be used in violation of any law, ordinance, or regulation of the United States, the state of Minnesota, or a municipal subdivision of the state of Minnesota having jurisdiction thereof. There was no provision in the lease expressly restricting the lessee's use of the premises exclusively to the one mentioned or for the forfeiture of the lease by the lessee in case of breach of covenant or condition, except for the nonpayment of rent. The lessor covenanted that he would not directly or indirectly erect, maintain, or operate a filling station within 300 feet of the leased premises or erect any structure obstructing the front view thereof.

The lease contains a clause giving the lessee an optional right to terminate it, which reads:

"If, during the term of this lease, or any renewal or extension thereof, the use of said premises for an oil and/or gasoline filling station be prevented, suspended or limited by any zoning statute or ordinance, or any other Municipal or Governmental action, law or regulation; or the use of said premises be affected or impaired by the widening, altering, or improving of any streets fronting or adjoining said premises; or should the State or Federal Government reroute any State or Federal highway now adjacent to the premises leased, then lessee may cancel this lease by giving thirty (30) days' written notice to lessor."

The answer sets up as a defense that the defendant exercised its option as lessee to terminate the lease and that by notice in writing given on February 25, 1943, it duly terminated the same as of March 31, 1943, upon the grounds that the use of said premises for

an oil "and/or" gasoline filling station was prevented, suspended, and limited by governmental action, law, and regulation of the United States Government under acts of Congress[2] and regulations adopted pursuant thereto. These were: First, regulations of the Petroleum Administration for War[3] prohibiting the retail sale of petroleum products on credit and the delivery of motor fuel to motorists during more than 12 hours a day or 72 hours a week,[4] which were subject to certain exceptions which are not important here; and, second, regulations of the Office of Price Administration[5] prohibiting the sale of petroleum and kindred products, rubber tires and tubes, and automobile parts and accessories, except to holders of coupons and certificates authorizing such purchases, and then only in such quantities as may be permitted by administrative regulation. Defendant claimed, and there is no dispute concerning the fact, that the rationing regulations mentioned entirely prevented and suspended its business while it was required to keep its filling station closed and very substantially reduced the volume of the business transacted at the filling station at other times.

The lessee tendered to the lessor the rent due for the month of March, which the lessor refused to accept.

[2] 54 St. (U. S. Stat. at Large) 676, c. 440, § 2(a), as amended by 55 St. 236, c. 157, as amended by 56 St. 176, c. 199, § 301, 50 USCA Appendix, § 633; 54 St. 885, c. 720, § 9, 50 USCA Appendix, § 309; 56 St. 23, c. 26, 50 USCA Appendix, § 901, *et seq.*

[3] 7 Fed. Reg. (Federal Register) 1942, p. 10091; 8 Fed. Reg. 1943, pp. 28, 981, 1394 and 928.

[4] The regulation limiting the hours during which a filling station may be kept open was revoked or vacated after the decision below.

[5] 7 Fed. Reg. 1942, pp. 561 and 2126, 3478, 9135, 9787, 10016, 10110, 10147, 10338, 10706, 10786, 10787, 11009, 11070; 8 Fed. Reg. 1943, pp. 274, 369, 372, 565, 607, 1028, 1202, 1203, 1282 and 1313, 1318, 1365, 1366, 1588, 1895 and 2288, 2098, 2213; 6 Fed. Reg. 1941, pp. 191, 4483, 6406, 6644, 6792, 6795; 7 Fed. Reg. 1942, pp. 72, 121, 257, 350, 434, 473, 562, 567, 743, 925, 1009, 1026, 1027, 1089, 2107, 2541, 2633, 2719, 2945, 2948, 3235, 3237, 3551, 3830, 4176, 4336, 4493, 4543, 4544, 4617, 4856, 5023, 5274, 5276, 5566, 5605, 5867, 6423, 6775, 7034, 7241, 7669, 7670, 7834, 7902, 7941, 7963, 7973, 8432, 8594, 8595, 9121, 9160-9179, 9392, 9724, 10072, 10336, 10993; 8 Fed. Reg. 1943, pp. 435, 606, 1585, 1628, 1629, 1839, 2030, 2152, 2348, 2595, 2600, 2670.

Plaintiff demurred to the answer. The demurrer was sustained, and defendant appeals from the order sustaining the demurrer.

In a memorandum made a part of the order, the court below stated that it construed the lease as providing that defendant had the right of termination only for a subsequently enacted or adopted law, ordinance, or regulation directly affecting the physical use of the premises and not one regulating the business transacted thereon apart from its location, and that the regulations in question relate to the business apart from its location and are not regulations of the physical use of the premises where the business was transacted, and held that the *use of the premises* for an oil or gasoline filling station *was not prevented, suspended, or limited* by governmental action, law, or regulation.

■ The question whether the wartime statutes and regulations of the federal government prevented, suspended, or limited the lessee's use of the premises for a filling station within the meaning of the clause giving the lessee an option to terminate the lease depends on the meaning of the clause.

Leases, like other writings, should be construed so as to give effect to the intention of the parties as manifested by the words used. A lease is to be construed as a whole. The process of construction involves consideration of the subject matter, surrounding circumstances, the objects and purposes to be accomplished, and the natural meaning of the language used in the lease. Commercial Union Assur. Co. Ltd. v. Foley Bros. 141 Minn. 258, 169 N. W. 793. Great weight should be given to the intention of the parties regarding the purpose of the lease. Conservative Realty Co. v. St. Louis Brg. Assn. 133 Mo. App. 261, 113 S. W. 229.

The declared purpose of the lease here is the operation and maintenance by the lessee of a gasoline filling and greasing station upon the leased premises. The lessee's use was to be protected by the lessor's covenants not to erect a filling station within 300 feet of the leased premises and not to erect any structure obstructing the front view thereof. The lessee's option to terminate the lease was for its protection against the contingency of governmental action

interfering with its beneficial use of the premises. Parties to a lease may agree that if by reason of governmental action the lessee is prevented from using the premises for the purposes which they contemplated, the lessee shall have the option to terminate the lease, surrender the premises, and be relieved of future liability for rent. Halloran v. Jacob Schmidt Brg. Co. 137 Minn. 141, 162 N. W. 1082, L. R. A. 1917E, 777; Hooper v. Mueller, 158 Mich. 595, 123 N. W. 24, 133 A. S. R. 399.

"Use" of premises by a lessee under a lease for the operation and conduct of a certain business thereon is nothing more than transacting such business. In cases involving a lessee's right to terminate a lease of premises for operating a saloon thereon, the lawful selling of liquor has been held to be the use contemplated. Halloran v. Jacob Schmidt Brg. Co. and Hooper v. Mueller, *supra;* Conservative Realty Co. v. St. Louis Brg. Assn. 133 Mo. App. 261, 113 S. W. 229.

It has been held in numerous cases involving complete frustration of the purposes of a lease by wartime regulations of the kind here in question that the use of the premises is the transaction of business thereon by making sales of merchandise, and that such use is frustrated where the sales cannot be made either because they are prohibited or the lessee is unable to procure merchandise to sell. Lloyd v. Murphy, — Cal. App. (2d) —, 142 P. (2d) 939; Colonial Operating Corp. v. Hannan Sales & Service, Inc. 265 App. Div. 411, 39 N. Y. S. (2d) 217 (*Id.* below, 178 Misc. 885, 36 N. Y. S. [2d] 745; 178 Misc. 879, 34 N. Y. S. [2d] 116); Port Chester Central Corp. v. Leibert, 179 Misc. 839, 39 N. Y. S. (2d) 41; Byrnes v. Balcom, 265 App. Div. 268, 38 N. Y. S. (2d) 801 (wherein the court pointed out that the regulations simply *restricted,* as distinguished from wholly prohibiting, the lessee's use of the premises); Canrock Realty Corp. v. Vim Electric Co. Inc. 179 Misc. 391, 37 N. Y. S. (2d) 139. As employed in the lease in the instant case, use of the premises consisted of selling the products and furnishing the services in the ordinary course of operating and maintaining a filling station. If that use was prevented, suspended, or limited,

it was a ground for the lessee's exercise of the option to terminate the lease.

"Limit" means to circumscribe, bound, restrict, confine within limits. See 37 C. J., Limit, p. 664. As used here, the word "limited" implies a restriction on the amount of business the lessee could transact in the operation and maintenance of the filling station. "Prevent" means to stop, preclude, frustrate, prohibit. 49 C. J., Prevent, p. 1343. "Prevented" involves a complete stoppage of business. Rowe v. Atlas Oil Co. 147 La. 37, 84 So. 485. "Suspend" means to cease or to cause to cease temporarily. As used in the lease, "suspended" means a temporary cessation of business. The answer shows that during 12 hours of each day and 96 hours of each week business was totally prevented and suspended and that during other times it was very substantially reduced in volume as a result of the regulations.

The language used in the lease to specify the means by which the lessee's use may be prevented, suspended, or limited as grounds for exercising the option is sweeping and general and comprehends in unlimited degree such diverse things as directly relate to and attach to the leased premises and others which are independent of and can have no connection therewith, but all of which in substantial degree affect the lessee's right and ability to transact the business constituting the use to be made of the premises.

The means enumerated are any zoning statute or ordinance; municipal or governmental action, law, or regulation; widening, altering, or improving a street fronting or adjacent to the premises; and rerouting of any state or federal highway "now" adjacent to the premises. A *zoning* statute or ordinance is one which regulates by districts the building development and uses of property. In re Opinion of Justices, 124 Me. 501, 128 A. 181; Kimball v. Blanchard, 90 N. H. 298, 7 A. (2d) 394; 43 C. J., Municipal Corporations, p. 333, § 361. See State ex rel. Beery v. Houghton, 164 Minn. 146, 204 N. W. 569, 54 A. L. R. 1012; Village of Euclid v. Ambler Realty Co. 272 U. S. 365, 47 S. Ct. 114, 71 L. ed. 303, 54 A. L. R. 1016. *Zoning* imposes restrictions on the use of the land

itself which attach to and run with the land. The term is not only capable of the definition given, but has acquired a "technical and artificial meaning" in accordance with the definition. Applestein v. Baltimore City, 156 Md. 40, 51, 143 A. 666, 670. "Governmental action" is the exercise of governmental power. Graves v. New York ex rel. O'Keefe, 306 U. S. 466, 59 S. Ct. 595, 83 L. ed. 927, 120 A. L. R. 1466. Under the subtitle "Effect of Governmental Action" are included exercises of legislative and administrative powers, in an illuminating article by Arnold D. McNair, entitled "Frustration of Contract by War," 56 L. Q. Rev. 173, 205-207. "Municipal action" is an exercise of governmental power by a municipality, and includes the adoption of ordinances and regulations, which are local laws. State v. Mandehr, 168 Minn. 139, 209 N. W. 750; State v. Lee, 29 Minn. 445, 13 N. W. 913; 4 Dunnell, Dig. & Supp. § 6748. It includes the adoption of zoning ordinances. City of Idaho Falls v. Grimmett, 63 Idaho 90, 117 P. (2d) 461.

Governmental action of a state is any act which a state may lawfully perform or authorize. Markwardt v. City of Guthrie, 18 Okl. 32, 90 P. 26, 30, 9 L.R.A.(N.S.) 1150, 11 Ann. Cas. 581. Gasoline filling stations located within a municipality may be proper subjects of police regulation. 43 C. J., Municipal Corporations, § 459. Governmental action of the federal government, as said in the O'Keefe case, 306 U. S. 477, 59 S. Ct. 596, 83 L. ed. 931, 120 A. L. R. 1466, *supra*, is "its every action within its constitutional power." "Regulation" is not confined to the imposition of restrictions, but includes all directions by rule of the subject matter. City of Newark v. Mount Pleasant Cemetery Co. 58 N. J. L. 168, 172, 33 A. 396.

It must be obvious that governmental action by law, ordinance, or administrative acts is not confined to action in the nature of real property restrictions, but, on the contrary, includes action affecting the conduct of business independent of and unrelated to the property upon which it is transacted. The federal government, under U. S. Const. art. I, § 8, cl. 17, can exercise exclusive jurisdiction over land in a state only where the land is acquired for one of the purposes therein mentioned and the state has ceded to

the federal government exclusive jurisdiction over the land so acquired. Absent such cession, the position of the federal government is that of an ordinary landed proprietor. Ft. Leavenworth R. Co. v. Lowe, 114 U. S. 525, 5 S. Ct. 995, 29 L. ed. 264; Kansas v. Colorado, 206 U. S. 46, 27 S. Ct. 655, 51 L. ed. 956; James Stewart & Co. v. Sadrakula, 309 U. S. 94, 60 S. Ct. 431, 84 L. ed. 596, 127 A. L. R. 821; James v. Dravo Contracting Co. 302 U. S. 134, 58 S. Ct. 208, 82 L. ed. 155, 114 A. L. R. 318; Surplus Trading Co. v. Cook, 281 U. S. 647, 50 S. Ct. 455, 74 L. ed. 1091; Barrett v. Palmer, 135 N. Y. 336, 31 N. E. 1017, 17 L. R. A. 720, 31 A. S. R. 835; In re O'Connor, 37 Wis. 379, 19 Am. R. 765. In peacetime, the federal government has no general police power, Hodges v. United States, 203 U. S. 1, 27 S. Ct. 6, 51 L. ed. 65, and consequently could not adopt a valid zoning regulation. In Oklahoma City v. Sanders (10 Cir.) 94 F. (2d) 323, 327, 115 A. L. R. 363, it was held that "zoning in congested urban communities is a precursor of low-cost housing and slum-clearance projects," and that as to lands acquired for such purposes, where the state in which they are located cedes exclusive sovereignty to the federal government, the latter may zone the same in the exercise of its power over the land which is attended for the purpose with all the incidents of an exercise by a state of its police power.

While the federal government could not control or regulate in peacetime the use of the premises here involved, it could under its power of taxation and regulation of interstate commerce adopt measures affecting the business transacted thereon. 24 Am. Jur., Gas and Oil, § 141. We take notice that all petroleum products sold at filling stations within the state are produced in other states or countries and find their way here through the channels of interstate and foreign commerce.

The war power of the federal government is plenary and includes the mobilization and utilization of the manpower and resources of the nation and the adoption of such incidental measures as may be necessary to wage war successfully. Hirabayashi v. United States, 320 U. S. 81, 63 S. Ct. 1375, 87 L. ed. 1774; 67 C. J., War, pp. 365-

371, §§ 55-60. In Public Service Comm. v. New York Cent. R. Co. 230 N. Y. 149, 152, 129 N. E. 455, 456, 14 A. L. R. 449, 452, the court said that the war powers "are not unlike what in the states we call the police power, but the police power raised to the highest degree." Pursuant to its war power, the federal government has adopted regulations affecting persons, property, and business, including those here involved. Taylor v. Brown (Em. App.) 137 F. (2d) 654; Spaeth v. Brown (Em. App.) 137 F. (2d) 669; United States Gypsum Co. v. Brown (9 Cir.) 137 F. (2d) 803; Northwood Apartments, Inc. v. Brown (Em. App.) 137 F. (2d) 809; Schueller v. Drum (D. C.) 51 F. Supp. 383; Payne v. Griffin (D. C.) 51 F. Supp. 588; United States v. 43,355 Square Feet of Land in King County (D. C.) 51 F. Supp. 905; United States v. Beit Bros. (D. C.) 50 F. Supp. 590; Brown v. Warner Holding Co. (D. C.) 50 F. Supp. 593; United States v. C. Thomas Stores, Inc. (D. C.) 49 F. Supp. 111; United States v. Minoru Yasui (D. C.) 48 F. Supp. 40; United States v. Polzin (D. C.) 48 F. Supp. 476; United States v. Jentzsch (D. C.) 48 F. Supp. 482; Roach v. Johnson (D. C.) 48 F. Supp. 833; Brown v. Wick (D. C.) 48 F. Supp. 887; Ex parte Ventura (D. C.) 44 F. Supp. 520. See McKinley v. United States, 249 U. S. 397, 39 S. Ct. 324, 63 L. ed. 668. During World War I, congress adopted wartime prohibition. Ruppert v. Caffey, 251 U. S. 264, 40 S. Ct. 141, 64 L. ed. 260. There is no occasion now to inquire, for the terms are plain upon their face, what constitutes a widening, altering, or improvement of a street or a rerouting of a highway. Where a widening, altering, or improvement of a street involves an encroachment or taking of adjacent premises, it affects them directly, otherwise only incidentally. A rerouting of a highway does not directly affect adjacent premises; but it does affect the business transacted thereon. A filling station is located adjacent to a routed highway with the hope and expectation of capturing business from the flow of traffic thereon. A change of route may be disastrous to the use of the premises for a filling station, not because it in any way affects the use to which the premises may be put, but because the rerouting effects a diversion of traffic which

deprives the filling station operator of the opportunity to obtain the business of selling his products to the users of the highway. See Buell v. Indian Refining Co. 62 Ohio App. 108, 23 N. E. (2d) 329.

The use of the words "any" and "any other" is sweeping in its reach. See Rollins v. Rice, 60 Minn. 358, 62 N. W. 325. "Any" is all-comprehensive. Unless modified by the context, it includes all persons and things referred to indiscriminately. United States v.. Weil (D. C.) 46 F. Supp. 323, 325; Haworth v. Hubbard, 220 Ind. 611, 44 N. E. (2d) 967, 144 A. L. R. 887. The word "other" means in addition to and different from those mentioned. Burnett v. Hopwood, 187 Minn. 7, 244 N. W. 254. "Any other" action, law, or regulation means all actions, laws, or regulations other than those mentioned. They include those that relate to the right and ability of the lessee to transact business as well as those which restrict the use of the property as a real property restriction. This best accords with the purpose of the lease, which was to enable the lessee to use the premises for the sale of its products.

There are present here provisions which relate solely to the volume of business which might be transacted on the premises by the lessee and which were adopted to afford the lessee an option to terminate the lease if the volume of business transacted was *limited* by any governmental action, law, or regulation rather than if the use which the lessee could make of the premises as such was thereby *restricted*. These are the provisions with respect to re-routing an adjacent highway and the negative covenants of the lessor to refrain from erecting or operating a filling station nearby and from erecting a structure obstructing the front view of the leased premises. These provisions do not impose any restrictions upon the use which the lessee might make of the leased premises. In fact, the lessee could continue to use the premises for the purposes for which they were leased even though the adjacent highway were rerouted and the lessor violated the covenants in question. These provisions relate solely to the amount of business which the lessee might transact on the leased premises. The provision with

respect to rerouting of adjacent highways was adopted for the purpose of enabling the lessee to terminate the lease if its business was diminished or limited by a diversion of traffic past the station caused by any rerouting of an adjacent highway. When all the provisions are considered together, they unerringly show that the parties had in mind not only governmental action, laws, and regulations restricting the uses to which the property might be put, but also those which affected the amount of business which might be transacted thereon by the lessee; in other words, the meaning is plain that the *use* of the premises would be prevented, suspended, or limited if the *business transactions* of the lessee thereon were.

If we keep in mind the object of the lease, which was to provide a place for the lessee to operate its business, a construction of the language in question as meaning a real property restriction affecting the *property only* and having no relation to the *business transacted* thereon involves the absurdity that the total deprivation of the lessee's right and ability to transact business would not be an interference at all with its *use* of the premises under the lease, but would be a total frustration of the use of the premises entitling it to terminate the lease under the doctrine of complete frustration of the objects thereof. It could hardly have been intended by the parties that the lessee's rights should be *less* under the provision of the lease in question, which was designed to protect it against the very kind of contingency which has arisen, then it would be if there had been no such provision in the lease at all.

The case of Robitzek Inv. Co. Inc. v. Colonial Beacon Oil Co. 265 App. Div. 749, 40 N. Y. S. (2d) 819, 821 (leave to appeal denied, 266 App. Div. 775, 42 N. Y. S. [2d] 922; 291 N. Y. 831, 50 N. E. [2d] 555), affirming — Misc. —, 37 N. Y. S. [2d] 772, was relied on below and is cited here as being contra to our views. The lease in that case contained a provision giving the lessee an option to terminate it "if for reason of any law, ordinance, injunction or regulation of properly constituted authority, Lessee is prevented from using all or any part of the property herein leased as a service station for the storage, handling, advertising or sale of gasoline or

other petroleum products or for the conduct of any of the business usually conducted in connection with gasoline service stations, or if the use of the premises herein demised shall be in any manner restricted for any of the purposes above stated." The court held that the same regulations as those here involved did not *restrict* the lessee's *use* of the premises, saying (265 App. Div. 752, 40 N. Y. S. [2d] 822): "the language employed shows that the clause has reference to a law or order regulating not the defendant's business, but the use of the premises as such; it refers to a real property restriction." The language is different from that in the instant case. Here the words are "prevented, suspended or limited"; in the cited case the word is "restricted." The word "restricted" is sometimes used as denoting a restriction of the use which may be made of land itself and which relates to and runs with it. Cantieny v. Boze, 209 Minn. 407, 296 N. W. 491; Klapproth v. Grininger, 162 Minn. 488, 203 N. W. 418, 39 A. L. R. 1080; Godley v. Weisman, 133 Minn. 1, 157 N. W. 711, 158 N. W. 333, L. R. A. 1917A, 333; State ex rel. Beery v. Houghton, 164 Minn. 146, 204 N. W. 569, 54 A. L. R. 1012; Village of Euclid v. Ambler Realty Co. 272 U. S. 365, 47 S. Ct. 114, 71 L. ed. 303, 54 A. L. R. 1016; 37 Wd. & Phr. (Perm. ed.) "Restriction" to "Restrictive Covenant." See Pelser v. Gingold, 214 Minn. 281, 8 N. W. (2d) 36. That is a narrow and technical meaning. It is at variance with the use of the same word in Byrnes v. Balcom, 265 App. Div. 268, 38 N. Y. S. (2d) 801, where the court held that the regulations *restricted,* but did not prohibit the conduct of the lessee's business and his use of the leased premises. The words "prevented, suspended or limited" have no such connotation. Parties are apt to use the word "restricted" in speaking of real property, but not the words "prevented, suspended or limited." In construing the lease here, we must remember that the words used should be given the meaning which it is most likely the parties attached to them.

Furthermore, there are absent in the Robitzek case the provisions present here, to which we have alluded, showing that the parties had in mind not only governmental action, laws, and regulations

relating to the use which the lessee might be permitted to make of the leased premises, but also others relating to the amount of business which it might transact thereon. These, as has been pointed out, relate to the business transacted apart from the leased premises on which the transactions occurred. Those provisions present a different allover picture here from that of the Robitzek case. In the cited case the word "restricted" conceivably might be construed to mean a real property restriction—that is, a restriction of the use of the premises as such. Here, the word "use" refers to the lessee's business transactions upon the premises and means that the *use* of the premises would be prevented, suspended, or limited if the lessee's business transactions thereon were so affected by the regulations in question. We do not regard the cited case in point.

The lessor contends that the words "or any other Municipal or Governmental action, law or regulation" should not be given their ordinary and natural meaning, which has been just pointed out, but that they should be qualified and restrained by the rule of *ejusdem generis* as being of the same kind as that of the preceding words, *viz.*, "any zoning statute or ordinance." The *rationale* of the rule of *ejusdem generis* is that all words in a writing should be given effect if possible; that where specific words enumerating members of a class are followed by general words capable of including the class and others the former would be rendered meaningless if the latter were given their full and natural meaning, since the latter include the former, and that the incompatibility should be reconciled by construing the general words as referring to the same kind as those enumerated by the specific words, and thus give meaning to both. It has been observed that the rule as applied to the construction of statutes is but a manifestation of the common law's aversion to statutes in derogation thereof, and that "usually the legislative intent is directly contrary to the result obtained by the *ejusdem generis* rule." 2 Sutherland, Statutory Construction (3 ed. by Horack) §§ 4909-4910. See State ex rel. City of St. Paul v. M. St. P. & S. S. M. Ry. Co. 190 Minn. 162, 251

N. W. 275.  The rule should be applied cautiously and always with an eye to avoiding a construction at variance with the intention disclosed by the entire writing.  The rule is not one of substantive law, but of construction, and is only an aid to the court in ascertaining the meaning of a writing.  It is doubtful whether the mention of a single instance, as here, is an enumeration.  State v. Scott, 35 Wyo. 108, 247 P. 699.  That aside, the rule has no application here, because, where the specific words embrace all the persons or objects of the class enumerated, the general words, because they do not include others of the kind enumerated, cannot refer to others of the same kind and consequently must take meaning beyond the class.  Otherwise the rule would render the general words meaningless.  Mid-Northern Oil Co. v. Walker, 268 U. S. 45, 45 S. Ct. 440, 69 L. ed. 841.  In United States v. Mescall, 215 U. S. 26, 31, 30 S. Ct. 19, 20, 54 L. ed. 77, 79, the court said, quoting from National Bank v. Ripley, 161 Mo. 126, 132, 61 S. W. 587, 588:

"* * * Whilst it [the rule of *ejusdem generis*] is aimed to preserve a meaning for the particular words, it is not intended to render meaningless the general words.  Therefore, where the particular words exhaust the class, the general words must be construed as embracing something outside of that class.  If the particular words exhaust the *genus* there is nothing *ejusdem generis* left, and in such case we must give the general words a meaning outside of the class indicated by the particular words or we must say that they are meaningless, and thereby sacrifice the general to preserve the particular words.  In that case the rule would defeat its own purpose."

In the instant case the class or genus was exhausted by enumerating "any zoning statute or ordinance."  Zoning statutes and ordinances embrace particular types of legislation having a technical meaning, as already pointed out.  No other type of statute or ordinance can be said to be of the same kind.  Consequently, under the rule, the general language must be held to apply to other and different kinds of legislation.  The inapplicability of the rule of

*ejusdem generis* serves to underscore the comprehensive and unrestricted meaning of the general language "any other Municipal or Governmental action, law or regulation."

Our conclusion is that the answer states facts sufficient to show that the lessee's use of the leased premises was prevented, suspended, and limited by the federal statutes and regulations in question and that it was error to sustain the demurrer.

Reversed.