**HOMES OIL REALTY CO., Inc.,**
a corporation, Appellant,

v.

**HECHINGER PROPERTIES COMPANY,**
a corporation, Appellee.

No. 2954.

Municipal Court of Appeals for the
District of Columbia.

Argued April 2, 1962.

Decided June 14, 1962.

Werner Strupp, Washington, D. C., for appellant.

Gilbert Hahn, Jr., Washington, D. C., with whom Bruce G. Sundlun and Ronald Rosenberg, Washington, D. C., were on the brief, for appellee.

Before HOOD, Chief Judge, QUINN, Associate Judge, and MYERS, Associate Judge of The Municipal Court for the District of Columbia, sitting by designation.

HOOD, Chief Judge.

Appellee, the owner of a gasoline filling station, sued appellant, its tenant, for two months' unpaid rent and for taxes alleged to be due and unpaid. The tenant denied owing the amount of taxes claimed, and, while admitting the rent was unpaid, contended in defense and by counterclaim that the rent should have been adjusted because traffic passing the filling station had been restricted for a period while the bordering roadway was being widened. The trial court found for the owner on its claim and denied the counterclaim. This appeal involves the meaning of two provisions of the lease.

1. THE PROVISION RELATING TO PAYMENT OF TAXES.

The lease states a flat monthly rental, an additional sum of rent for each gallon of

gasoline sold in excess of a certain number every month, and then provides:

> "TENANT shall pay as additional rent, during the term of this lease, any increase in real estate taxes upon the premises and improvements demised in excess of Three Hundred Thirty-Seven Dollars and Fifty Five Cents ($337.55). TENANT agrees to pay LANDLORD upon the presentation of receipted bills for such taxes a sum equal to the excess over said Three Hundred Thirty Seven Dollars and Fifty Five Cents ($337.55)."

On August 1, 1959, the effective date of the lease, the taxes attributable to these premises totalled $524.40 rather than $337.-55. In 1960 and 1961 the taxes chargeable to the property were $547.40. The owner claims the tenant is liable for each of the two years for the difference between the taxes stated in the lease, $337.55, and the actual taxes, $547.40. The tenant admits that the taxes have increased since the signing of the lease, but contends that its liability is limited to such increase, that is, the excess of $547.40 over $524.40.

■ The owner offered no explanation for the insertion in the lease of the figure $337.55 instead of the then actual taxes. The tenant does not claim that the figure was inserted fraudulently or with intent to deceive. The starting point in ascertaining the meaning of the provision must therefore be in the language of the lease. The meaning of a written agreement "is to be ascertained from the words used, if it can be understood from them. If the language is ambiguous, then the intent of the parties must be ascertained by some other means." Zellan v. Cole, 87 U.S.App.D.C. 9, 183 F.2d 139.

■ The tenant emphasizes the first sentence of the paragraph which obligates it to pay "any increase" and argues that this obviously refers to a contingency which the parties contemplated could occur in the lifetime of the lease, and that it could have no reference to an increase which had occurred prior to making the lease. The owner emphasizes the second sentence of the paragraph and argues that it plainly bound the tenant to pay all taxes in "excess" of the stated sum. There is an ambiguity between the two sentences and in our opinion it must be resolved in favor of the tenant.

Generally a tenant is not responsible for the taxes on the leased property, but it has become the practice in long-term commercial leases to require the tenant to pay any increase in taxes that may occur, that is, to pay taxes in excess of those paid by the lessor at the time of making the lease. The purpose of such a provision is to provide the owner with a stable return on his investment, and to enable him to predict that return with greater certainty at the inception of the lease term. If the parties intended to employ this provision in its normal function, then it was their intention that the owner would be saved harmless from increases in the taxes subsequent to the effective date of the agreement. Certainly it was not the tenant's intention to pay more than one-third of the owner's taxes, and the language does not unambiguously require it to assume such an obligation. And it was certainly not the intention of the tenant to pay, in effect, higher rent under the guise of indemnifying the owner for increased taxes.

Despite the absence of specific representations by the owner that the sum stated was the amount actually being paid, a reasonable man in the position of the tenant, when offered such an agreement, could reasonably arrive at that conclusion. Taking into consideration the usual function of such provisions, the fact that the taxes assigned to this property were not a matter of public record but were determined by the owner,[1]

---

1. The gasoline station and several other commercial properties were taxed to the owner as a whole.

and that it was the owner who prepared the agreement, our conclusion is that the burden of the ambiguity must fall on the owner rather than on the tenant.

## 2. THE PROVISIONS FOR ADJUST-MENT OF RENT.

■ Between March 1960 and early 1961, while Bladensburg Road was being widened, detour signs were placed on that street so as to divert traffic while the work was in progress. Access to the filling station was permitted, but the station could be reached only with some difficulty. As a result, sales of gasoline declined precipitately, and it became necessary to close the station for five weeks in the summer of 1960. To justify its refusal to pay rent for this period, and as the basis for its counterclaim, the tenant invoked paragraph 10 of the lease agreement, which provides:

"If by requirement of law, governmental regulations or order, or by voluntary compliance with governmental request, the sale of gasoline shall be limited or curtailed, there shall be a fair and equitable adjustment of rent until the aforesaid restrictions are removed."

For reasons hereafter stated, we hold that this language is not broad enough to relieve the tenant of his obligation to pay rent on the facts set forth above.

The widening of a street with its accompanying detours and limitations on traffic is not a requirement of law or a governmental regulation which limits or curtails the sale of gasoline. Of course, the widening of the street was by a governmental order, but such order imposed no limitation on the sale of gasoline by the tenant. Undoubtedly the work diverted traffic and undoubtedly this diversion of traffic materially lessened the sale of gasoline at the station, but this was not the direct result of the governmental order. The diversion of traffic was merely incidental to the work on the street. We think it plain that the lease provision has reference to a law or order directly restricting the sale of gasoline, such as wartime gasoline rationing.

The temporary rerouting of traffic during the construction of highway improvements is a frequent occurrence in this city. It is an eventuality which the parties could easily have contemplated might arise during the lease term and they could have provided for it in express language.[2] The lease specifically gave relief to the tenant from responsibility in the event of governmental revocation of the right to conduct a filling station on the premises or destruction of the premises by fire. Highway construction is no less foreseeable. In the absence of language in the lease plainly providing for that possibility, it must be held that the tenant assumed the risk of its occurrence.

The judgment is reversed with instructions to enter judgment for appellee in the amount of two months' unpaid rent plus an amount in taxes equal to the excess over $524.40 for each of the two years involved. Judgment for appellee on counterclaim is affirmed.

---

**2.** See e. g., Orme v. Atlas Gas & Oil Co., 217 Minn. 27, 13 N.W.2d 757, where the paragraph in issue reads:
"If, during the term of this lease, or any renewal or extension thereof, the use of said premises for an oil and/or gasoline filling station be prevented, suspended or limited by any zoning statute or ordinance, or any other Municipal or Governmental action, law or regulation; or the use of said premises be affected or impaired by the widening, altering, or improving of any streets fronting or adjoining said premises; or should the State or Federal Government reroute any State or Federal highway now adjacent to the premises leased, then lessee may cancel this lease by giving thirty (30) days' written notice to lessor."